## UNITED STATES v. FLYNN et al.

United States District Court
S. D. New York.
Dec. 21, 1951.

Myles J. Lane, U. S. Atty., and Roy M. Cohn, John M. Foley, James B. Kilsheimer, III, Robert M. Reagan, and Albert A. Blinder, Assts. U. S. Atty., all of New York City, for the Government.

Frank Serri, Brooklyn, N. Y., Frank Serri, Brooklyn, N. Y., and Joseph Forer, Washington, D. C., of counsel, for Albert Francis Lannon.

Thomas Emerson, New Haven, Conn., for all other defendants.

CONGER, District Judge.

These are motions by the defendants for certain relief, including the following: (1) dismissal of the indictment on various grounds; (2) suppression of certain evidence allegedly illegally obtained; (3) a bill of particulars as to matters alleged in the indictment; (4) a pre-trial subpoena of documents and papers presented to the Grand Jury or to be offered in evidence at the trial; (5) dismissal of the indictment, or in the alternative, for a hearing on this motion on the grounds that the indictment violates the Fifth and Sixth Amendments in that the Grand Jury returning it was not constituted according to law; and (6) a continuance and postponement of the trial.

The Government has also moved to quash subpoenas served on the Attorney-General of the United States, the Director of the Federal Bureau of Investigation, the Special Agent in charge of the New York office of the Federal Bureau of Investigation, and the Director of Census.

The defendants are charged with conspiring along with others not defendants to violate Section 2 of the Smith Act[1] in that they conspired: "(1) unlawfully, wilfully, and knowingly, to advocate and teach the duty and necessity of overthrowing and destroying the Government of the United States by force and violence; and (2) unlawfully, wilfully, and knowingly, to organize and help to organize as the Communist Party of the United States of America a society, group and assembly of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence."

In all, the indictment contains 9 charging paragraphs and 29 overt acts.

1. The bases of this motion are threefold: (a) that the statute of limitations bars that part of the indictment which alleges that defendants conspired to organize the Communist Party; that since these allegations form a substantial part of the indictment the whole indictment must fall; (b) that the indictment fails to state an offense under the Smith Act as the Act has been interpreted by the Supreme Court in United States v. Dennis, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137; (c) that the indictment of the defendants under the circumstances prevailing at the time the indictment was returned is invalid under the First Amendment and under the version of the clear and present danger test applied in the Dennis case.

I shall deal with these points seriatim. (a) The statute of limitations applicable here provides that: " * * * no person shall be prosecuted * * * unless the indictment is found or the information is instituted within three years next after such offense shall have been committed." 18 U.S.C. § 3282.

The defendants point to paragraph 2 of the indictment which reads as follows: "2. It was part of said conspiracy that said defendants and co-conspirators would in the spring and summer of 1945, in the Southern District of New York, themselves participate and induce others to participate, in the dissolution of the Communist Political Association and the organization of the Communist Party of the United States of America as a society, group and assembly of persons to teach and advocate the Marxist-Leninist principles of the overthrow and destruction of the Government of the United States by force and violence."

Defendants argue from this that since the charged conspiracy to organize the Communist Party took place in 1945, more than three years prior to the time the indictment was found, this crime is barred by the statute of limitations. In addition, since these allegations are a substantial part of the indictment, the whole indictment must be dismissed.

■ It seems to me that defendants misconstrue the crime charged in the indictment. They are charged not with what is usually termed a substantive crime, but with the crime of conspiracy. The essence of the crime of conspiracy is two or more persons combining with the intent and purpose of committing a public offense by doing an unlawful act or doing a lawful act in an unlawful manner. It is a distinct offense from that which the parties intend to accomplish as a result of the conspiracy.

■ Where, during the existence of the conspiracy, there are successive overt acts, the period of limitation must be computed from the date of the last act of which there is appropriate allegation and proof, and this although some of the earlier acts may have occurred more than three years before the indictment was found. Fiswick v. United States, 1946, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196; Brown v. Elliott, 1912, 225 U.S. 392, 32 S.Ct. 812, 56 L.Ed. 1136.

Here we have charged a conspiracy commencing on or about April 1, 1945 and continuing up to the date of the filing of the indictment (June 20, 1951).

■ A number of the overt acts are alleged to have occurred in 1951. Therefore, in accord with the above rule the statute of limitations is not a bar to this

---

1. 18 U.S.C. (1946 ed.) § 10, now 18 U.S.C. (1948 ed.) § 2385.

indictment, nor may any part or portion of the indictment be picked out to have the statute applied to it as a bar since all of the alleged criminal acts are charged to have been committed within the time scope of the conspiracy set forth in the indictment.

The defendants' contention, which the Government disputes, rests principally upon the meaning of the word "organize", but in view of my ruling above it will not be necessary to discuss or rule on this point. The defendants' motion to dismiss upon this ground is denied.

(b) On this point the defendants reason thusly. Since, according to the holding in the Dennis case, the constitutional application of the Smith Act depends upon various circumstances and conditions not recited in the Act itself, the indictment is improper for failure to set forth these circumstances and conditions in accordance with Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S.C., requiring that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."

They further point out that it is apparent that the Dennis indictment was based upon the theory of Gitlow v. People of New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138, which held that the clear and present danger test did not apply because the statute there in question specifically outlawed utterances which the legislature had determined as involving such danger of substantive evil that they might be punished. And they say that the Gitlow rule was rejected by the Supreme Court in the Dennis case.

The present indictment is patterned after the Dennis indictment. In fact, it is virtually identical *pro tanto* but it includes more charging paragraphs and lists 29 overt acts. The Dennis indictment contained no overt acts.

Judge Medina found the Dennis indictment susceptible of proof of various circumstances and conditions upon which the constitutional application of the Smith Act depends. There is no reason, therefore, why that should not hold true in connection with the present indictment.

Also it is again obvious that whether or not the present indictment is influenced by the "discarded" Gitlow rule, it certainly is no more contaminated than the Dennis indictment which obtained a clean bill of health from Judge Medina upon a theory sustained by the Supreme Court and, inferentially, other than Gitlow.

Assuming, therefore, that this point was not squarely raised in the Court of Appeals, nor in the Supreme Court in the Dennis case I would consider it rash to abuse an indictment patterned after one which met all attacks in the course of the Dennis litigation and culminated in the Dennis holding in the Supreme Court.

█ I deny the defendants' motion on this ground.

(c) This argument depends upon the purportedly changed conditions since the Dennis indictment was found.

It is true that the Court of Appeals and the Supreme Court relied upon judicial notice of the "times" and conditions in the world in determining clear and present danger.

The defendants say now that I should take judicial notice of various pronouncements of Government officials and the like tending to minimize the influence of the Communist Party in this country as bearing upon the improbability of an attempt to overthrow the Government by force and violence.

For example, J. Edgar Hoover, Director of the Federal Bureau of Investigation, has placed the number of members of the Communist Party in the United States on December 31, 1950 at 43,217.[2]

The defendants ask what danger of the overthrow of the Government is represented in these members who number only

2. Hearings before Subcommittee on Appropriations, Department of Justice Appropriations for 1952, House of Representatives, 82d Cong. 1st Sess., p. 336.

He has also asserted that "for every party member there are 10 others ready, willing and able to do the party's work." U. S. News & World Report, March 30, 1951, p. 34.

3/100 of 1 per cent of the total population of 160,000,000 in the United States.

Without answering this question, I might take judicial notice of the fact that a successful revolution in Russia was accomplished by a group whose membership was probably less proportionately to the population of all Russia than the above figures show.[3] I might also take notice of the Korean War and the conflicting interests therein.

I might also take judicial notice as Judge Frankfurter did in the Dennis case "that the Communist doctrines which these defendants have conspired to advocate are in the ascendency in powerful nations who cannot be acquitted of unfriendliness to the institutions of this country." 341 U. S. at page 547, 71 S.Ct. at page 886, 95 L.Ed. 1137.

It might be enlightening at this point to call attention to an extract from the prevailing opinion in the Dennis case which seems to be quite apropos: "In the instant case the trial judge charged the jury that they could not convict unless they found that petitioners intended to overthrow the Government 'as speedily as circumstances would permit.' This does not mean, and could not properly mean, that they would not strike until there was certainty of success. What was meant was that the revolutionists would strike when they thought the time was ripe. *We must therefore reject the contention that success or probability of success is the criterion.*" 341 U. S. at page 510, 71 S.Ct. at page 867, 95 L.Ed. 1137. (Emphasis added.)

However, I shall not take judicial notice of anything but rather I shall pass this point for determination at the trial where in addition to facts obtained through judicial notice, evidence of the probability or improbability of the substantive evil may be adduced.[4]

The motion to dismiss the indictment is denied.

2. On this motion the defendants ask for the following relief; (a) suppress all discs, records, logs, transcripts and notes of any kind made of or reflecting intercepted telephonic communications of defendants, or of attorneys-at-law who, from time to time may have appeared for them; (b) suppress all evidence obtained as a result or by use of such intercepted telephonic communications; (c) direct the United States to turn over to the defendants or their attorneys all discs, records, logs, transcripts and notes of such intercepted telephonic messages; (d) suppress all notes, information, memoranda obtained as a result of intercepting mail addressed to, or mailed by the defendants and suppress all evidence obtained as a result thereof; (e) direct the United States to turn over to the defendants all the notes, information and memoranda of such intercepted mail; (f) suppress all records, transcripts, discs and notes of any kind made by microphone recordings of the voices of defendants; and suppress all evidence obtained as a result, or by use of such microphone recordings; (g) direct the United States to turn over to the defendants such microphone discs, recordings, transcripts, notes and memoranda thereof; (h) dismiss the indictment pending against defendants in the event it appears on said hearing that the indictment was obtained on evidence illegally secured; and (i) grant further relief, etc.

In Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307, the Supreme Court was confronted with the problem of the extent to which evidence obtained through intercepted telephone conversations was incompetent in Federal prosecutions. In the course of the opinion, the Court said: "The burden is, of course, on the accused in the first instance to prove to the trial court's satisfaction that wire-tapping was unlawfully employed. Once that is established—as was plainly done here—the trial judge must give op-

3. See History of the Communist Party of the Soviet Union (International Publishers, New York, 1939), p. 183.

4. I say "may" here not in the permissive sense but merely in speculation on the possibility that the Government or the defendants will offer such evidence.

930

portunity, however closely confined, to the accused to prove that a substantial portion of the case against him was a fruit of the poisonous tree. This leaves ample opportunity to the Government to convince the trial court that its proof had an independent origin." 308 U.S. at page 341, 60 S.Ct. at page 268, 84 L.Ed. 307.

The Court went on to discuss generally the need for celerity in criminal trials and the abuse that might arise from the interruption of trials upon a claim of illegality in obtaining evidence. Although the present case is not on trial it is plain that the Supreme Court's remarks apply to this proceeding. The Court stated, 308 U.S. at page 342, 60 S.Ct. at page 268, 84 L.Ed. 307: "Therefore claims that taint attaches to any portion of the Government's case must satisfy the trial court with their *solidity* and not be merely a means of eliciting what is in the Government's possession before its submission to the jury." (Emphasis added.)

The defendants' application for the relief stated is supported by the following:

An affidavit by the defendant Lannon to the effect that the defendants were under surveillance by the F. B. I. prior to the indictment; that the Attorney-General and other spokesmen for the Department of Justice have stated that wire-tapping is a practice of the Department in security cases; that this is a security case; that it is presumptive that the defendants' wires have been tapped; that the practice is evidenced by the facts in U. S. v. Coplon, D.C., 88 F.Supp. 921, reversed, 2 Cir., 185 F.2d 629.

An affidavit by defendant Gerson that he caused an examination to be made by a qualified technician of the telephones at the offices of the Communist Party in New York, that this examination revealed that the telephones were tapped; that the source of the interceptions was not investigated by the technician; that defendant Gerson and some of his codefendants witnessed the demonstration; that such telephones are used for communications between defendants and their attorneys; that the interceptions reflect the systematic policy of the Department of Justice.

An affidavit by Hattie F. Charney, wife of defendant Charney, that on July 23, 1951 she picked up the phone to make a call but did not hear the usual dial tone; that while waiting for the dial tone she heard the voice of a man saying, "Get the stamps at the post office and don't forget to pick up the reels," that she also heard the movement of a chair; that she believes the words were spoken by someone recording the conversations on her phone.

The defendants propose that the above showing is sufficient for ordering a hearing so that they might prove that the F. B. I. has obtained evidence by illegal means.

I believe that the papers are totally insufficient for such a procedure.

The defendants' conclusions depend upon the merest innuendo. They surmise that if the Justice Department has intercepted telephone conversations in other security cases it should be presumed that such a practice obtained here. They claim a qualified technician found a tap on the phones of the Communist Party office in New York. They did not develop the source, nor do they say who the technician was, nor do they present an affidavit from him or her as to the findings. Mrs. Charney heard a voice on the phone making some innocuous remark and the Court is supposedly obliged to conclude that the voice represented the F. B. I.

It is sheer guesswork that F. B. I. activity accounts for all of this. It certainly falls far short of the "solidity" of such claims mentioned in the Nardone case.

The United States Attorney, Mr. Lane, has sworn in an affidavit presented in opposition to this motion that no illegal evidence was used before the Grand Jury and that none will be used on the trial. He states also: "*The evidence will come from past or present members of the Communist Party who heard and observed the defendants, and from writings and speeches of the defendants themselves. Obviously, such evidence could not possibly come from any illegal source, and I deny flatly that it did.*"

In United States v. Frankfeld, 100 F.Supp. 934, 938, in the District Court of Maryland, the defendants moved before Judge Chestnut for the identical relief in a similar prosecution. Judge Chestnut denied their motion after having considered papers similar to the moving papers herein. See opinion filed October 22, 1951, supplemental opinion filed October 31, 1951. I agree with Judge Chestnut that: "In the instant case, after considering the affidavits of the defendants, and of the United States Attorney in opposition thereto, it is my judgment that no useful purpose would now be subserved by hearing the defendants' motion to suppress evidence of intercepted telephone communications, either the original messages or other evidence clearly derived therefrom, because there is an entire lack of definiteness in the defendants' motion as to what, if any, particular messages were intercepted, and the affidavit of the United States Attorney is explicit and definite that no such evidence will be offered at the trial."

I believe their motion should be denied here. In passing, I think it should be noted that the defendants offered nothing as a basis for the relief under headings "d" and "e".

I believe it is proper at this point to pass on the Government's motion to quash the subpoenas served on the Attorney-General, the Director of the Federal Bureau of Investigation and the New York Special Agent.

These subpoenas were served in connection with the defendants' motion to suppress evidence of wire-tapping, etc. Since this case is not on trial, the subpoenas pre-suppose a hearing on this question of illegal evidence. I have, however, denied the motion for a hearing.

Therefore, the subpoenas, having no independent standing, should be quashed. See United States v. Hiss, D.C., S.D.N.Y. 1949, 9 F.R.D. 515.

My conclusion on this point is not intended to imply that proper subpoenas may not be served if and when a proper occasion for their use arises.

3. By this motion the defendants seek particulars of the allegations of the indictment. Their demand includes 58 items, some of which have sub-divisions and others multiple demands, comprising in all in excess of 100 particulars.

Items 1 to 18 relate to the conspiracy to advocate and teach the duty and necessity of overthrowing the Government by force and violence while items 19 to 36 which are practically identical with items 1 to 18 relate to the conspiracy to organize the Communist Party.

The particulars demanded include items such as the dates between April 1, 1945 and the date of indictment when defendants met to conspire, etc. within and without the Southern District of New York; the places they met on each date; who among defendants and co-conspirators were present; the specific acts, declarations, oral or written, etc. of defendants or co-conspirators or on their behalf or under their direction which purport to constitute the conspiracy, etc; how, when, where, by whom and in what manner these acts were committed and declarations made; what doctrines, statements, declarations or publications were agreed upon in the conspiracy, etc. and the times, places, manner of adoption, who was present and when and how published; method and means of accomplishment agreed upon; means of force and violence agreed upon; specific acts, declarations, oral or written by defendants or co-conspirators or on their behalf or under their direction, etc. pursuant to conspiracy; how, when, where, by whom said acts were committed and declarations made.

Items 37 to 58 relate to the specific charges and overt acts contained in the indictment; and they require every shred of detail concerning these charges and overt acts. For example, item 37 requests particulars of the manner in which the defendants and co-conspirators participated, or induced others to participate, in the dissolution of the Communist Political Association and where. Item 38 requires copies of written declarations, statements, resolutions, calling of meetings, if any, concerning the means of dissolving the

Communist Political Association, and if published, when, where and by whom. The remainder of the demand takes the same form.

■ Without more, I think the defendants have completely misconceived the function of bills of particulars in criminal prosecutions. Their purpose is to apprise an accused of the nature of the charge with such clarity that he may prepare for trial, without fear of surprise, and may avail himself of an acquittal or conviction in a subsequent prosecution for the same offense. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545.

To grant the defendants' demands would be to countenance a verbal rummaging through the Government's files in order that the defendants might ferret out each scrap of evidence that those files contain. Only the names of the witnesses are free from the defendants' demands. The demand for the bill goes far beyond anything to which defendants could possibly be entitled. Johnson v. United States, 4 Cir., 1925, 5 F.2d 471; Sawyer v. United States, 8 Cir., 1937, 89 F.2d 139.

■■ But the defendants may not have the Government's evidence, United States v. Kushner, 2 Cir., 1943, 135 F.2d 668, certiorari denied 320 U.S. 212, 63 S.Ct. 1449, 87 L.Ed. 1850; nor do I believe that the indictment is not specific enough for defendants' trial preparations and protection.

With few exceptions the same particulars were sought in the Dennis case, and all were refused. United States v. Foster, D.C., S.D.N.Y.1948, 80 F.Supp. 479, affirmed, 2 Cir., 1950, 183 F.2d 201, affirmed 341 U.S. 494, 71 S.Ct. 859, 95 L.Ed. 1137.

Of course, the defendants are aware of the Dennis case but they seek to limit its application by the following arguments:

1. "Bill will clarify and help prevent confusion which permeated Dennis case, both on the trial and in the appellate courts."

2. "Full pre-trial disclosure is essential to a fair trial."

3. "Defendants indicted under unwise law, sustained by a dubious decision, endangering freedom of speech, are entitled to every procedural aid."

4. "Rule against 'disclosure of evidence' is confusing, should be dropped and not applied in freedom of speech cases."

I believe it is sufficient to dispose of these arguments by pointing out that there was no confusion of the *charges* permeating the Dennis case; that full pre-trial disclosure as advocated by the defendants is not yet prevalent in the Federal criminal cases; that I am not aware that the Smith Act is unwise law and that the Dennis decision is dubious; that although the rule against disclosure of evidence is sometimes confusing in application, it remains a rule, and there is no reason why it should not remain such in Smith Act prosecutions.

The motion for a bill of particulars is denied.

4. Upon this motion the defendants seek to subpoena for pre-trial inspection all documents and papers presented to the Grand Jury or to be offered in evidence at the trial.

The latest word on this subject is contained in Bowman Dairy Co. v. United States, 341 U.S. 214, 71 S.Ct. 675, 679, 95 L.Ed. 879, wherein the Supreme Court held that " * * * any document or other materials, admissible as evidence, obtained by the Government by solicitation or voluntarily from third persons is subject to subpoena" under Rule 17(c) of the Federal Rules of Criminal Procedure.

The subpoena therein read in part as follows: "all documents, books, papers and objects (except memoranda prepared by Government counsel, and documents or papers solicited by or volunteered to Government counsel which consist of narrative statements of persons or memoranda of interviews), *obtained by Government counsel, in any manner other than by seizure or process,* (a) in the course of the investigation by Grand Jury No. 8949 which resulted in the return of the indictment herein, and (b) in the course of the Gov-

ernment's preparation for the trial of this cause, if such books, papers, documents and objects, (a) have been presented to the Grand Jury; or (b) are to be offered as evidence on the trial of the defendants, or any of them, under said indictment; or (c) are relevant to the allegations or charges contained in said indictment, whether or not they might constitute evidence with respect to the guilt or innocence of any of the defendants * * *." [Emphasis added.]

The Court excluded from production under the subpoena only the materials called for in clause (c).

The government, attempting to lessen the force of this holding, points out that the Bowman case is a criminal prosecution under the anti-trust laws which type of proceeding is *"sui generis* because the crime involved must be differentiated not only from the generality of crimes but even from other conspiracies which require the allegation and proof of overt acts." United States v. Aluminum Co. of America, D.C., S.D.N.Y.1941, 41 F.Supp. 347, 348. But there is no suggestion in the Bowman opinion that the holding should not have general application in criminal cases.

The Bowman opinion adverts to circumstances controlling the operation of a subpoena under 17(c): "No good reason appears to us why they (documents, etc. in possession of Government not subject to Rule 16) may not be reached by subpoena under Rule 17(c) as long as they are evidentiary. This is not to say that the materials thus subpoenaed must actually be used in evidence. It is only required that a *good-faith effort be made to obtain evidence*. The court may control the use of Rule 17(c) to that end by its power to rule on motions to quash or modify." (Emphasis added—341 U.S. at page 220, 71 S.Ct. at page 678, 95 L.Ed. 879.)

"Where the court concludes that such materials ought to be produced, it should, of course, be solicitous to protect against disclosures of the identity of informants, and the method, manner and circumstances of the Government's acquisition of the materials." 341 U.S. at page 221, 71 S.Ct. at page 679, 95 L.Ed. 879.

In the Frankfeld case, supra, Judge Chestnut was confronted with the same problem that is now before me. I am informed that the indictments in the Frankfeld case are similar, if not almost identical with the one here under consideration. As I have done Judge Chestnut refused to grant a bill of particulars but he did grant relief similar to that asked for here. I feel that it is logical and proper to follow the procedure followed by Judge Chestnut. The attorneys should each submit to the Court separate proposed orders, embodying, respectively, what materials the Government will consent to exhibit and what materials the defendants primarily seek. When they are submitted for settlement I will hear each side.

This motion is granted as indicated.

5. The defendants seek to dismiss the indictment on the grounds that the indictment violates the Fifth and Sixth Amendments in that (1) the Grand Jury which indicted the defendants totally excludes manual workers or negroes; (2) the panel of May 21, 1951 from which the indicting Grand Jury was drawn totally excludes manual workers or negroes; (3) manual workers and negroes were virtually totally excluded from the Grand Jury list from which the indicting Grand Jury was chosen; (4) the said exclusions occurred despite the fact that manual workers and negroes constitute a substantial portion of the population of the Southern District of New York which is eligible for jury service in said Southern District; (5) the aforesaid Grand Jury list, panel and indicting Grand Jury do not in fact constitute a fair and impartial cross-section of the community; (6) the aforesaid exclusions violate the Fifth and Sixth Amendments to the United States Constitution as well as Title 28 U.S.C. § 1861–1867, governing the selection of the Grand Jurors of this Court.

The defendants have filed affidavits and submitted evidentiary material in support of their challenge the purport of which are, concisely, that there were no manual work-

934

ers or negroes among the 23 members of the indicting Grand Jury; that there were no manual workers or Negroes among the 75 members of the Grand Jury Panel from which the indicting Grand Jury was selected; that the Grand Jury Master List had a membership of 1991 of which approximately 22 were manual workers and from which Negroes were virtually totally excluded [5]; that on the basis of age and citizenship requirements for jury duty alone, manual workers represent 50% and Negroes represent 13% of the eligibles for jury service in this District; that all other requirements for jury eligibility are satisfied by manual workers and Negroes in the same proportions as all other groups of people.

On the basis of the foregoing, the defendants contend " * * * that the total and virtually total exclusions which in fact exist are so fantastically improbable as a matter of chance as to warrant the conclusion that design or system existed to effectuate the results."

Assuming the correctness of the defendants' figures merely for the sake of this motion, I hold that they do not support the conclusion the defendants urge.

 The law is plain that, to prevail upon a motion such as this, the challengers must clearly prove intentional or systematic exclusion of any group or class. Frazier v. United States, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187; Fay v. People of State of New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043; Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181; United States v. Foster, D.C., 80 F.Supp. 479, and D.C., 83 F.Supp. 197, 2 Cir., affirmed 183 F.2d 201, review refused on this point, 340 U.S. 863, 71 S.Ct. 91, 95 L.Ed. 630.

The defendants merely show great disproportion. How this occurs has been explained before, and a reference to Judge Medina's opinion in D.C., 83 F.Supp. 197 and to the opinion of the Court of Appeals, supra, is adequate exposition of the point.

Attention is called to the remarks of Judge Knox cited in Judge Medina's opinion.

 I hold that the defendants' application fails completely to show intentional or systematic exclusion of manual workers or Negroes. The persons charged with administering the Grand Jury system deny (just as they did in the Foster case) any such intentional or systematic exclusion. I believe them and it would be futile to order a hearing, as the defendants request, to develop such matters.

This motion is denied.

In view of the disposition of this motion, I grant the Government's motion to quash the subpoena duces tecum dated September 7, 1951 and September 21, 1951 served on Roy V. Peel, Director of Census.

6. The defendants ask that the trial of this suit be postponed for six months.

Their reasons are expressed in two affidavits to which numerous newspaper clippings are annexed.

These reasons may be summarized as follows:

1. Prosecutions under the Smith Act, an unwise law destructive of the First Amendment, should not be rushed.

2. Petitions for rehearing in the Dennis case, a disastrous and divided decision, crippling the First Amendment, are pending in the Supreme Court.

3. Hysteria is so rampant that the Federal Bench is being terrorized and threatened thus jeopardizing defendants' rights to a fair trial.

4. Hysteria and its concomitants have similarly infected the Justice Department.

5. Within six months peace may be declared in Korea, thus lessening the tension and making more probable a fair trial.

6. A fair trial would be impossible under present conditions of hysteria to which the public and, necessarily, the jurors to be chosen are subjected.

I believe it is obvious from the foregoing that the defendants' application has no merit.

5. The defendants have served subpoenas on the Director of Census for the purpose of obtaining the exact statistics with respect to the number of Negroes on the Master List.

I have not been notified by any competent authority that the Smith Act is unwise law destructive of the First Amendment.

The petitions for rehearing were. denied on October 8, 1951.

It is not true, to my knowledge, that hysteria has so affected the Federal Bench and Department of Justice that a fair trial may not be had.

It is not certain that peace in Korea will be declared within six months.

Finally, it is not clear that the supposed conditions which the defendants fear will be any different in six months.

A similar motion was made in the Dennis case. Judge Hand's comments 183 F.2d on page 226 of the opinion of the Court of Appeals, supra, are most pertinent here.

This motion is denied.

After this opinion was prepared but before it was filed, I was informed that on December 11, 1951 Judge Mathes of the Southern District of California, Central Division, granted a motion to dismiss the indictment in an identical prosecution. United States v. Schneiderman, D.C., 102 F.Supp. 87, 97. Generally, he held that the indictment did " * * * not allege the intent essential to charge that the means claimed to be employed by the conspirators would, if pursued, constitute any criminal offense against the United States." I have studied Judge Mathes' opinion; with deference I must disagree with his holding.

In this connection I point out that Judge Chestnut sustained the indictment on November 5, 1951 in the Frankfeld case upon which the following attack was made among others: that "the indictment, by reason of its vagueness, and of the vagueness of the statutes on which it is based, and by reason of its failure to set forth all necessary elements of the crime it purports to charge, deprives these defendants of their right, in a criminal prosecution, to be informed of the nature and cause of the accusation, in violation of the Sixth Amendment." (Taken from Notice of Motion.)

Settle orders in accordance with the foregoing.