UNITED STATES v. FUJIMOTO et al.

Cr. No. 10495.

United States District Court
D. Hawaii.

Feb. 5, 1952.

See also 101 F.Supp. 293.

Howard K. Hoddick, Acting U. S. Atty., Honolulu, T. H., Rex A. McKittrick, Sp. Asst. to Atty. Gen., for plaintiff.

Harriet Bouslog (of Bouslog & Symonds), Myer C. Symonds (of Bouslog & Symonds), Honolulu, T. H., for defendants.

McLAUGHLIN, District Judge.

The indictment here challenged was returned on August 29, 1951, charging the seven defendants with conspiring to violate the Smith Act, 18 U.S.C. § 2385. This litigation is not yet at issue, for the defendants' request for 90 days' time within which to prepare and file various preliminary motions was granted without opposition by Judge Metzger. When on November 30, 1951, defendants filed nine motions, which when stacked measured some two and a quarter inches, the Government asked for 60 days to reply. Though the defendants were agreeable to having even more time given to the prosecution, the Court granted the request to the extent of but 45 days, with leave to apply for more time upon a showing of necessity.

During December Counsel were notified by the Court that as the Government's response was due January 15th, January 21st was tentatively set as the date for hearing the motion attacking the validity of the Grand Jury, with the hearings of the other motions to follow at intervals soon thereafter, if need be.

On January 9th, the Government moved for more time, stating also that it was considering asking the same Grand Jury due to come into session January 28th to amend the indictment by returning a new indictment, conforming to the December 11, 1951, ruling of Judge Mathes in the Schneiderman case, D.C., 102 F.Supp. 87, to the effect that a similar Los Angeles indictment was defective in view of the Supreme Court's opinion in the Dennis case, Dennis v. U. S., 1951, 341 U.S. 494, 71 S.Ct. 857,

95 L.Ed. 1137. The request for two additional weeks was not opposed and thus it was granted and the tentative date for the motion relating to the Grand Jury was advanced to February 4th. With the Grand Jury scheduled to reconvene Monday morning, defendants filed on Friday morning, January 25th, an added or tenth motion attacking the individual Grand Jurors for cause and asking for a hearing prior to the time the Grand Jury returned to session.

At a conference the same day upon this subject, Government Counsel advised Defendants' attorneys that it had been decided not to ask the Grand Jury for a new indictment. It was thereupon stipulated that, reserving the right to object, this new motion could be heard after the motion challenging the array scheduled for hearing February 5th. A day was added by accident and then by agreement.

Late January 28th the Government filed three affidavits and memoranda in opposition to each of the Defendants' original nine motions.

I have had the Defendants' nine motions, several lengthy affidavits and legal memoranda, under study since they were filed in November. The tenth motion also received due attention upon its filing and, too, due attention has been given to the material filed by the prosecution. Having done this judicial homework, I am prepared to rule at this time upon each of the pending motions.

It is, of course, elementary that the presentation of legal arguments, oral or written, rests within the discretion of the Court, for such is submitted as an aid to the Court upon indistinct points of law. Here the law is clear, and I am fully conversant with it and hence need not trouble Counsel. Too, hearings to receive evidence upon motions are not matters of right. And as to motions of the nature of those now before the Court, they are dependent upon first making out a prima facie case. Certainly where assuming all that the movant says factually to be true, a case for relief is not made out, no useful purpose will be served in conducting a hearing or hearings which would be of no avail.

894

Accordingly, as in U. S. v. Foster, D.C., 80 F.Supp. 479, U. S. v. Flynn, D.C.S.D. N.Y., 103 F.Supp. 925, and U. S. v. Frankfeld, U.S.D.C.Md. 1951, 100 F.Supp. 934, all Smith Act cases wherein kindred if not practically identical motions were tendered for reasons which will appear, I do not regard hearings upon these motions necessary to their disposition. A tentative hearing schedule previously set is, therefore, cancelled.

Rulings upon the ten separate motions follow:

## I

Motion To Dismiss Indictment Because Grand Jury Not Validly Selected.

This motion, to quote the Government's summary of it "charges that in preparing the list the Jury Commissioners intentionally and systematically discriminated against (a) manual laborers and other persons from the lower economic classes, (b) certain geographical areas, and (c) against races and nationalities.

"Defendants further allege over-representation from the Honolulu Chamber of Commerce and from the largest firms located in Honolulu and under-representation from the most highly unionized industries, notably sugar and pineapple. Defendants charge that such areas as Aiea, Kaneohe, Kailua and Lanikai, inhabited largely by the more affluent citizens, were excessively represented while such areas as the 5th representative district received inadequate representation. It is further alleged that by 'taking into account' the race and nationality of the prospective Grand Jurors the Jury Commissioners chose a disproportionately large number of Caucasians."

Annexed to this motion is an affidavit, as amended, by the defendant John E. Reinecke presenting a statistical analysis of all of the jury lists of this Court for the past 13 years. This is not the first time that this Court's procedures for jury selection have been attacked but it is by far the biggest and loudest siege that has ever been laid against this judicial appendage.

Prior attacks against other juries have been repelled, one with the finality of an opinion by the Circuit Court of Appeals for the Ninth Circuit, Wong Yim v. U. S., 1941, 118 F.2d 667, certiorari denied, 313 U.S. 589, 61 S.Ct. 1112, 85 L.Ed. 1544.

And as to this particular Grand Jury not only have the judges of this Court kept an eye upon the methods and the work of the Jury Commissioners but Judge Metzger in September 1951 passed favorably upon the validity of this very Grand Jury in the Llanos case [1] (Cr. No. 10,426). To be sure, the motion in the Llanos case was not as broad as the challenge here. There the challenge basically charged discrimination against Filipinos and women. But it may be noted that this Grand Jury was drawn under Judge Metzger's direct supervision. And as a Judge's obligations are of such a compelling nature that if the jury selected did not conform to the requirement of the law the Court would have ordered it stricken upon its own motion; for all defendants, real and potential, and the public, are entitled to a lawfully constituted Grand Jury. The charge that this and grand juries for the past 13 years have been invalid for the reasons assigned in the motion is an aspersion upon the integrity and of the attention to duty of the past and present judges of this Court. Most assuredly, a chief judge as sensitive in matters of this nature as is Judge Metzger, witness International Longshoremen's Warehousemen's Union v. Ackerman, D. C., 82 F.Supp. 65; Id., 9 Cir., 187 F.2d 860, certiorari denied 342 U.S. 859, 72 S.Ct. 85, vigilant as he has been to my personal knowledge in keeping an eye upon and instructing the Jury Commissioners, would have corrected errors as gross and as flagrant as those asserted here, if they existed, appeared to exist, or even been intimated in his division of this Court to which this Grand Jury reported.

■■ Further, the presumption of regularity which surrounds the work of the Jury Commissioners has long been recognized as a rebuttable yet very substantial presumption. It does not easily fall apart

1. No opinion for publication.

when attacked by a shotgun loaded with statistics. To prevail upon a motion like this, there must be clear and convincing proof of intentional or systematic exclusion of a group or class. Frazier v. U. S., 1948, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187; Fay v. New York, 1947, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043; Thiel v. Southern Pac. Co., 1946, 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181; Akins v. Texas, 1945, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692.

The prototype of this motion met its fate when it collided with this solid rule of law in U. S. v. Foster, D.C. 1948, 80 F.Supp. 479, and again Id., D.C. 1949, 83 F.Supp. 197, as to the trial jury panel, and again when the trial court was affirmed by the Second Circuit speaking through Justice Learned Hand, 1950, 183 F.2d 201 at page 216. Judge Hand's words concerning a similar challenge to the trial jury panel are pertinent here, especially, 183 F. 2d at page 224. The authorities cited show, too, that the jury system is not a mechanical process and hence the Jury Commissioners are entitled to ask relevant questions as a basis for exercising their judgment and discretion. The racial question complained of, one of fifteen questions, is in order, so as to assure a fair legal cross-section on the Grand Jury panel.

Also, absent intent or design, even complete and total exclusion of specific groups, classes, races and areas from the Grand Jury list does not invalidate the Grand Jury, for such proportional representation of such groups is not required. See, in addition to the authorities above cited, Cassell v. Texas, 1950, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839; Lewis v. U. S., 1929, 279 U.S. 63, 49 S.Ct. 257, 73 L.Ed. 615; U. S. v. Gottfried, 2 Cir., 1948, 165 F.2d 360; and a very recent case cited by the Government in its memoranda, having a character like this case, U. S. v. Flynn, where similar motions were decided by Judge Conger, D.C.S.D.N.Y., 103 F.Supp. 925.

Assuming, arguendo, the correctness of Mr. Reinecke's mathematical study, it does not support the defendants or any one of the defendants' multiple charges of systematic or intentional exclusion by the Jury Commissioners. Conversely, by affidavit each Commissioner categorically denies the defendants' allegations. The mass of submitted statistics creates no reasonable grounds for disbelieving the Jury Commissioners.

A party tendering a motion such as this must, in order to be entitled to a hearing, spell out by the moving papers a prima facie case. Where from the face of these papers it appears that, even granting the truth of the charge, still no relief would be warranted in point of law, a purposeless, time-consuming hearing will not be held. And a movant will not be heard to contend that his case will be made to appear from evidence, as defendants here add, "Upon evidence to be presented at the time of the hearing". In all motions the moving party has the duty to put forth his best foot forward. And this is particularly so as to a motion like this that attacks one of the foundations of the judicial system.

As the defendants have failed by their motion and affidavit to make out a prima facie case upon which relief could be granted, a hearing would be futile. The motion, therefore, is denied.

However, if on or before February 12th defendants wish to tender in affidavit form, or in the shape of authenticated documents, the evidence which they had planned to present at the time of hearing and to demonstrate that they have a prima facie case, I will promptly examine it and ascertain if it requires a modification of this order. Otherwise this ruling stands.

II

Motion Challenging Individual Grand Jurors For Cause.

So far as I can ascertain in the Smith Act cases, this motion is an Hawaiian creation. It is the defendants' 10th, but 11th hour, motion filed in anticipation of possible reconsideration by the Grand Jury of this indictment. It overlaps other motions making the same claim. It is charged that because upon returning this indictment the twenty-two Grand Jurors serving asked

Judge Metzger in open court to increase defendants' bail, though he had in a habeas corpus matter, before indictment, reduced it from the $75,000 figure set by the U. S. Commissioner to $5,000 for each defendant—and he did accede to this request, in part, and increased the bail to $7,500 each—that thereby each Grand Juror demonstrated his bias and prejudice against the defendants and in favor of the United States.

Secondly, the motion charges foreman R. D. Fischer with a lack of qualification to be a Grand Juror because, as set forth in an affidavit by the defendant Jack W. Hall, during the 1949 waterfront strike Fischer was active in the P.T.A. and other circles regarding conditions caused or believed to be caused by the strike. It is asserted that by this experience Fischer acquired a dislike for the I.L.W.U. and hence for the defendant Hall, its regional director. Neither ground of this motion could sustain it.

 Mr. Justice Jackson's language in Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, does not support the great weight which the defendants place upon it. Though bail be not of proper concern of the Grand Jury, it by no means follows that because it indiscreetly made bail its concern it vitiated the validity of a true bill returned upon its oath.

 The contentions as to Fischer are even more illogical and irrelevant. Even if they were sound, so long as twelve or more Grand Jurors concurred in preferring the indictment, it cannot be successfully challenged.

The motion is denied.

## III

Motion To Dismiss Indictment Because Of Matters Occurring Before The Grand Jury. Fed.Rules Crim.Proc. Rules 6(e) and 12(b) (4), 18 U.S.C.A.

By this motion defendants seek to inspect the Grand Jury minutes, to have a hearing on such fact issues as may then be made to arise, and to have the indictment thereafter dismissed because, it is charged—

1. No lawful evidence was presented to the Grand Jury.

2. Indictment resulted from bias, prejudice and coercion.

3. Grand Jury acted on hearsay evidence.

4. Grand Jury acted upon evidence illegally obtained.

5. Grand Jury returned indictment without legal warrant.

In support of this motion, the defendant Charles K. Fujimoto submits an affidavit asserting that since the Grand Jury was in session but six and one-half hours, it could not possibly have received evidence on all material points, and hence the indictment is obviously defective. He also asserts that the Grand Jurors were biased and prejudiced because the Grand Jury had made a recommendation on the subject of bail to Judge Metzger. Too, he says he believes that his telephone was tapped and that he also believes that the Federal Bureau of Investigation in Honolulu had a fictitious listing for one of its telephones. This, plus the Attorney General's and J. Edgar Hoover's public statements that wire-tapping was sanctioned in security cases, makes Mr. Fujimoto think the jury used evidence obtained via wire-tapping in founding this indictment.

Complaint is made also of books and papers taken, it is said, without a search warrant from Mr. Fujimoto's home at the time of his arrest, and which material he believes was illegally used by the Grand Jury in considering this matter in returning this indictment.

 The motion, including the affidavit, lacks factual allegations. It is predicated upon hunches, surmises and beliefs based upon imperfect reasoning. The indictment, in the absence of specific facts to the contrary, is presumed to have been based upon legal evidence and to be a valid true bill. U. S. v. Remington, 2 Cir., 1951, 191 F.2d 246; Cox v. Vaught, 10 Cir., 1931, 52 F.2d 562; Gridley v. U. S., 6 Cir., 1930, 44 F.2d 716. No such facts are here alleged. Guesses do not suffice.

What has been said above about the recommendations as to bail applies also with equal force to this motion, which repeats the same point.

 Nor has the defendants' motion any better basis than speculation upon

which to ground the request for inspection of the Grand Jury's minutes. In the absence, as here, of an affirmative prima facie showing of merit for such a request, the minutes will remain secret as the law requires. Schmidt v. U. S., 6 Cir., 1940, 115 F.2d 394; U. S. v. American Medical Association, D.C.D.C.1939, 26 F.Supp. 429; Rule 6(e) of the Federal Rules of Criminal Procedure.

Being devoid of facts but replete with surmise, suspicion and speculation, the motion is denied. No reasonable basis for a hearing has been shown. Dennis v. U. S., supra; U. S. v. Flynn, supra; U. S. v. Frankfeld, supra.

█ Upon terms to be settled, however, defendants under Rule 16 of the Federal Rules of Criminal Procedure may upon request inspect such things as were taken from them at the time of arrest.

## IV

Motion to Dismiss Because of Illegally Obtained Evidence.

█ This is a so-called wire tap or "Nardone" motion. It is related to the preceding motion, as the same Fujimoto affidavit is made to serve here, too. I shall not detail the motion's ten separate variations of the same theme. Suffice it to say that it is nearly identical with the motions in the Frankfeld and Flynn cases. I am acquainted with both Coplon cases, U. S. v. Coplon, D.C., 88 F.Supp. 921, Id., 2 Cir., 185 F.2d 629, New York case, and the District of Columbia case reported in D.C., Cir., 191 F.2d 749, in both of which cases certiorari was denied by the Supreme Court, U. S. v. Coplon, 72 S.Ct. 362, Id., 72 S.Ct. 363. And I understand the "First" Nardone v. U. S., 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314, and also the "Second", 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307, "Nardone" cases. My opinion is in accord with Judge Chestnut's in the Frankfeld case. Here, too, is a lack of definiteness. Nothing, in the Supreme Court language, "solid" has been tendered to merit a hearing. Like the prior verbose motion and affidavit, nothing but conjecture is advanced. Under these circumstances a hearing is not called for.

This is especially true where, as here and as in the Flynn case, the Acting United States Attorney has on file an affidavit specifically and categorically denying the defendants' charges and affirmatively revealing in a factual manner the nature of the non-Nardone type of evidence which will be presented by the Government upon trial. See also U. S. v. Flynn, D.C., 103 F. Supp. 925; U. S. v. Schneiderman, D.C. S.D.Cal., 102 F.Supp. 87; U. S. v. Spector, D.C.S.D.Cal., 102 F.Supp. 75.

The motion is denied on all grounds.

## V

Motion To Dismiss Indictment.

█ By this motion, defendants referring to the fact made to appear by affidavit of Counsel that the Communist Party of the United States was created on July 28, 1945, assert that the Statute of Limitations has barred the prosecution. This contention has been made in nearly, if not all, of the Smith Act cases, and it has yet to succeed, because as here, the charge of a conspiracy continuing to the date of the indictment August 29, 1951, discloses the lack of merit in the contention.

█ Next it is said that the Smith Act is un-Constitutional. The Supreme Court has spoken on this point. So long as the Dennis decision stands, the question posed by the defendants is not open to them to discuss, for like the Court they, too, are bound by the Supreme Court's rulings.

█ Then it is said no offense is stated. The indictment is manifestly patterned upon the charge in the Dennis-Foster case. As the pattern has had the approval of the Supreme Court, this ground also does not sustain the motion.

Finally it is said the statutes underlying the charge are at least un-Constitutional as applied in this indictment, for as construed and applied the defendants' Constitutional rights under the first, fifth, sixth, ninth, and tenth amendments are violated. Again these contentions are not new in Smith Act cases. In each case save one, the

courts have overruled the defense upon these points. The one case is the Schneiderman case in which on December 11, 1951, Judge Mathes upheld a motion like this, holding that since the Supreme Court decision in the Dennis case, a Smith Act indictment had to charge in the language of a clear and present danger in order to be valid. Like Judge Conger in U. S. v. Flynn, I have great respect for Judge Mathes but I simply do not here agree with him. The Supreme Court does not uselessly consider Constitutional questions. In the Dennis case the Supreme Court, in view of its obligations, policies and practices, can safely be said to have approved Judge Hand's finding, specifically that the indictment in the Dennis case was valid. 183 Fed.2d 201, at page 207.

 Further, not only did Judge Mathes' ruling grow, as he says, out of an abundance of caution, but as I read the law, in Section 2 of the Smith Act in this particular, the word "wilful" implies an intent to bring about a "present" danger, as readily as it does imply a "clear" danger.

 The Supreme Court's decision in the Dennis case is based upon the indictment's validity, and as this indictment was cut from that record and added to by way of allegations of eleven overt acts, thus giving defendants even more information than would be required under this Act as a minimum, the motion must be, and is, on all grounds denied.

## VI

Motion For Bill Of Particulars. Rule 7(f) of the Federal Rules of Criminal Procedure.

 This is an application for a fishing license to inspect the Government's evidence in advance of trial. It asks for 49 particulars. To grant the same would be in Judge Conger's apt language, to countenance a verbal rummaging through the Government's files in order * *. * [to] ferret out each scrap of evidence that those files contain." U. S. v. Flynn.

 The purpose of a bill of particulars is not to make the prosecution reveal its evidence in advance of trial. If, as here, the indictment clearly advises defendants of the charge so that they can prepare their defense, and protect themselves against double jeopardy, no Bill of Particulars is needed.

As in U. S. v. Foster, 80 F.Supp. 479, supra; Dunne v. U. S., 8 Cir., 138 F.2d 137, 1943; U. S. v. Flynn, supra; and U. S. v. Frankfeld, supra, in which Smith Act cases similar motions were denied, so, too, is this motion denied.

## VII, VIII, IX and X

Motions for Severance and a Separate Trial. Rule 14 of the Fed.Rules Crim. Proc.

Claiming prejudicial joinder, defendants Hall, Fujimoto, Reinecke, Ariyoshi, and Kimoto each seek a severance and a separate trial.

The reasons assigned in the annexed affidavits are whimsical. By the defendant Hall it is said that the issue to be tried will evolve around the right of labor to organize. Then defendant Reinecke says, as he sees it his defense will turn upon freedom of speech and academic freedom, while the defendants Ariyoshi and Kimoto say, as to them, the central issue will be freedom of the press. Each of these defendants hence takes a position which is attuned to his occupation, and says that he should not have to suffer and also defray the cost of a trial upon issues that are of no concern to him; and that additionally a joint trial with such varied and multiple defenses would be confusing.

 Of course, this motion is premature, as this case is not yet at issue as to any one of these defendants, but I will put the case at issue now. Under the circumstances I would not consider receiving a plea of guilty as to any one of the seven defendants or from any Smith Act defendant. The Clerk is accordingly instructed to enter for each defendant in this case a plea of not guilty.

 The case now being at issue, the motion is in position but as no sound basis for exercising the Court's discretion in favor of this motion exists, it is as to each movant, denied. This case now being at issue, it is hereby set for trial February 26th at 9:00 a. m.