### UNITED STATES v. WEINBERG.
Cr. 829–52.

United States District Court
D. Columbia.
Nov. 21, 1952.

568

Charles M. Irelan, U. S. Atty., and William Hitz, Asst. U. S. Atty., Washington, D. C., J. Frank Cunningham, Special Asst. to Atty. Gen., for United States.

Harry I. Rand and J. A. Fanelli, Washington, D.C., for defendant.

KIRKLAND, District Judge.

In the present proceedings the defendant was indicted by a District of Columbia Grand Jury on September 8, 1952, and charged with perjury under Title 22, Section 2501 of the District of Columbia Code. Specifically, the defendant is alleged to have testified falsely as to his communistic affiliations, while appearing before the House of Representatives Committee on Un-American Activities, investigating, among other things, the leakage of certain atomic secrets.

Defendant has filed the following motions: (1) Dismissal of the indictment on various grounds; (2) suppression of certain evidence allegedly illegally obtained; (3) a bill of particulars as to matters surrounding the indictment; (4) production and inspection of various documents and transcripts related to the allegations in the indictment; (5) inspection of the Grand Jury minutes; (6) a hearing to ascertain bias on the part of the Grand Jurors.

The Government has also moved to quash subpoenas served on the Attorney General of the United States and the Director of the Federal Bureau of Investigation. All motions have been disposed of save two herein discussed by the court:

Counsel for the defendant has devoted the greater part of his oral argument to the motion seeking the suppression of evidence allegedly obtained directly or indirectly through the use of illegal methods. The basis for the motion, sifted from the affidavits and argument, is that the evidence was illegally obtained by the interception of telephonic communications, the interception of mail, and the recording of conversations in private homes.

Defendant, by way of affidavits, claims Government agents intercepted a telephone conversation occurring on a particular evening in March of 1943 between "Joe" and a Mrs. Nelson, and that "Joe" later was identified by the House Committee as "Scientist X" or the defendant herein, Joseph Weinberg. Dr. Weinberg contends this interception was what inspired the F. B. I. agents to commence a surveillance of his activities. The affiant also states he has reason to believe Government agents intercepted mail "allegedly" sent by defendant.

One of counsel for the defendant has filed an affidavit reciting a chance colloquy with a Washington taxicab driver, who had been a member of a local District of Columbia Grand Jury in 1950, which had considered evidence against the defendant, but had not returned an indictment. A conversation was alluded to between the taxicab driver and the head of a division of the Department of Justice as to the type of evidence available for possible prosecu-

-tion. However, testimony was taken in open court and upon consideration of the testimony and the affidavits filed herein, this court found, as a matter of fact, that there was no breach of the grand jury oath, that the incident was remote and had no bearing on the matter at hand, and that there was no showing of illegal evidence being presented to the grand jury on which the taxicab driver was sitting as a juror.

There is filed in the record documents indicating the defendant has denied knowing Steve Nelson, a notorious communist, or his wife any time prior to 1949; nor does he admit being a party to any telephone conversation made to the Nelson home at any time, much less the month of March in the year 1943. In his memorandum defendant's counsel refers to the communication as an "alleged" phone call. It is also to be noted that the indictment filed herein was returned by a Grand Jury impaneled on March 3, 1952, and sworn in on March 4, 1952.

The law involving wiretapping has been a controversial theme among the courts in recent years. However, the legal sediments are beginning to settle and from the several Supreme Court decisions following The Nardone case (Nardone v. United States) 308 U.S. 338, 60 S.Ct. 266, 268, 84 L.Ed. 307, there is emerging decided and clearer law on the subject.

■ In the Nardone decision the procedural approach to attack the misuse of illegal wiretapping was outlined as follows:

"The burden is, of course, on the accused in the first instance to prove to the trial court's satisfaction that wiretapping was unlawfully employed. Once that is established—as was plainly done here—the trial judge must give opportunity, however closely confined, to the accused to prove that a substantial portion of the case against him was a fruit of the poisonous tree. This leaves ample opportunity to the Government to convince the trial court that its proof had an independent origin."

And the very following paragraph added these comments:

"Dispatch in the trial of criminal causes is essential in bringing crime to book. * * * Therefore claims that taint attaches to any portion of the Government's case must satisfy the trial court with their solidity and not be merely a means of eliciting what is in the Government's possession before its submission to the jury."

■ The defendant's affidavits do not allege that there is, in fact, any evidence whatever that will be offered by the Government based on intercepted telephone messages. There is an entire lack of definiteness as to any particular interception. Cf. United States v. Frankfeld, D. C.1951, 100 F.Supp. 934. The defendant's conclusions have mere suspicions and innuendos as their premises. This is not the "solidity" and affirmative proof necessary and therefore does not merit a hearing under the Nardone Rule. Courts need a reasonable assurance that the evidence challenged is tainted or is "a fruit of the poisonous tree"; mere conjecture will not suffice. United States v. Fujimoto, D.C. 1952, 102 F.Supp. 890; United States v. Flynn, D.C.1951, 103 F.Supp. 925.

In no instance, has defendant advanced one scintilla of proof that there was any impropriety or illegal evidence presented to the Grand Jury returning the indictment herein. Furthermore, the Special Assistant to the Attorney General, who is prosecuting this case, unequivocally and categorically, in his affidavit declares:

"That no evidence was presented to the grand jury which returned this indictment, and the prosecution does not intend to offer any evidence at the trial, which was obtained directly or indirectly from intercepted telephonic communications, interceptions of the mails, searches or seizures, wiretaps, microphones, dictaphones, or by any illegal or improper methods."

■ Even assuming, arguendo, there was illegal evidence submitted to a previous Grand Jury, of which the taxicab

570

driver was a member, the inference does not necessarily follow that a Grand Jury impaneled two years later also had presented for their consideration the same or similar unlawful evidence. In United States v. Pillon, D.C., 36 F.Supp. 567, two prior indictments had been dismissed because they were based upon intercepted telephone communications. A petition was filed calling the court's attention to the two previous proceedings and resulting dismissal of the indictment. On page 568 of 36 F.Supp. of the opinion, Judge Byers answered the petitioners contention:

"* * * having suffered the dismissal of the earlier indictments for the reason stated, it is manifestly improbable that the Government would do such an idle thing as to again rely upon evidence which the Supreme Court has condemned in plain and unmistakable terms."

▮ The defendant is further precluded from the relief he presently seeks because he is not in a position to assert this right. The measure of the straits in which the defendant has placed himself becomes apparent at this point. Defendant denies he knew the Nelsons at any time prior to 1949; yet he is now seeking to have the evidence suppressed, because there was an interception of an "alleged" telephone call between "Joe" and Mrs. Nelson in March of 1943. This is the only telephone call alluded to by the defendant. The court asked counsel for Dr. Weinberg if the latter was admitting he made such a telephone call. Counsel replied no such admission was being made. Thus, the record does not disclose, as a matter of fact, that the defendant was a participant in any intercepted telephone conversation. In Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312, the Supreme Court was petitioned to extend Sec. 605 of the Federal Communications Act, 47 U.S. C.A. § 605, so as to make available to one, not a party to the intercepted communication, the standing to object to the divulgence of such evidence. The Supreme Court refused to be so persuaded and by analogy on page 121 of 316 U.S., on page 1004 of 62 S.Ct. of the opinion explained:

"No court has ever gone so far in applying the implied sanction for violation of the Fourth Amendment. While this court has never been called upon to decide the point, the federal courts in numerous cases, and with unanimity, have denied standing to one not the victim of an unconstitutional search and seizure to object to the introduction in evidence of that which was seized. A fortiori the same rule should apply to the introduction of evidence induced by the use or disclosure thereof to a witness other than the victim of the seizure. We think no broader sanction should be imposed upon the Government in respect of violations of the Communications Act. The court below was of the view that a divulgence of the intercepted messages might lawfully be made with the consent of the sender, and we agree. The court further thought that, as the sender might make such divulgence lawful by his consent, none but he was intended to be protected against divulgence by the statute. Again we agree."

The same reasoning quoted from the Goldstein case, supra, apply to the facts surrounding the alleged interception of mail in this case. Defendant once more is saddled to his position and so long as he refuses to affirmatively identify himself as the sender of the letter he is not within the purview of the Fourth Amendment protecting victims against unlawful search and seizure.

Although defendant requests suppression of all recordings of conversation in private homes he indicates no knowledge of any such recordings ever having been made. Even if there were a basis, in fact, upon which the court might proceed there is serious question whether the defendant's legal theory has any support in light of Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 and On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967.

Defendant's motion to suppress the evidence on the grounds that it was illegally obtained and the motion to dismiss based

on the alleged use of unlawful evidence are, accordingly, denied.

There is remaining one additional matter. Apparently, the defendant presupposed a hearing would be granted to enable him to prove his belief regarding alleged wiretapping. The hearing having been denied and the subpoenas, served on the Director of the F.B.I. and the Attorney General of the United States, having no independent standing, they are hereby quashed. United States v. Hiss, D.C., 9 F.R.D. 515; United States v. Frankfeld, supra; and United States v. Flynn, supra.

Although the present motion seeking a hearing is overruled, the order to that effect will be without prejudice to any subsequent motion, based on knowledge of a particular intercepted message, wherein the defendant is the sender.

Let an order be submitted accordingly.