## UNITED STATES v. FRANKFELD et al.
### Crim. A. No. 22209.

United States District Court
D. Maryland, Criminal Division.
Nov. 30, 1951.

Motion to Reconsider Overruled
Jan. 25, 1952.

See 102 F.Supp. 422.

See also 100 F.Supp. 934.

450

Bernard J. Flynn, U. S. Atty., Baltimore, Md., for plaintiff.

Harold Buchman, Baltimore, Md., for defendants Meyers, Braverman, Wood and Regina Frankfeld.

Joseph Forer, Washington, D. C., for defendants Wood and Regina Frankfeld.

R. Palmer Ingram, Baltimore. Md., for defendant Dorothy· Blumberg.

Philip Frankfeld, pro se.

CHESNUT, District Judge.

The six defendants in the above case are jointly indicted for conspiracy to violate the Smith Act, 18 U.S.C.A. §§ 11 (1946 ed.) and 371 (1948 ed.) and 2385. Five of the defendants are represented by counsel and the sixth, Philip Frankfeld, has heretofore declined the assistance of counsel offered to be appointed by the court if desired. All the defendants have heretofore filed a number of motions preliminary to the trial of the case. I will discuss these motions severally.

## Motion to Dismiss the Indictment

This is based on four grounds: (1) that the indictment is only vague and general and legally insufficient in particulars stated; (2) that the Smith Act is unconstitutional; (3) that the Grand Jury which returned the indictment was not selected and drawn in accordance with law and the requirements of the United States Constitution, and (4) that the indictment was not found within three years next after the alleged offense was committed.

I find no legal merit in any of these contentions.

1. The indictment was for conspiracy. On examination I find·that (a) it alleges a conspiracy by and between six several defendants; (b) and alleges conspiracy with others not defendants, eleven of whom are specifically named in the indictment; (c) the beginning and duration of the conspiracy and the place it occurred are named; (d) the objects of the conspiracy are stated in some detail and (e) eleven overt acts containing the nature and dates and in some cases the places of occurrence are specified. This is in accordance with the long prevailing customary practice with respect to indictments for conspiracy. I find it sufficient in this case.

2. The Smith Act was held constitutional by a large majority of the Supreme Court of the United States in the case of Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137. The Act had previously been held constitutional by the District Court for the Southern District of New York, United States v. Foster, 80 F.Supp. 479, and by the unanimous decision of the Court of Appeals for the Second Circuit, 183 F.2d 201. A motion for reargument of the case has been overruled by the Supreme Court, 72 S.Ct. 20. The decision of the Supreme Court is, of course, imperative authority for the decision here.

3. The defendants' objection to the Grand Jury is based only on the contention that there were only 2 of its 23 members who could properly be classed as "manual workers", and that this small number resulted from a constitutionally faulty principle of selection of jurors by the Jury Commissioners. More broadly stated, the defendants' contention is that the method of selection of juries in this court by the Jury Commissioners has resulted in the capture of the jury system by the higher economic strata of the population and a virtual exclusion from the jury system of the less well-to-do class described as "man-

ual workers" or "daily wage earners". The evidence does not support this contention.

The only evidence offered by the defendants on this point is based on a statistical analysis of the stated occupations of persons constituting Grand Juries in this court for the respective four terms annually in the past five years. By this analysis counsel for the defendants compute that on the average only about 3% of the Grand Jurors have given their occupations as manual workers, and reference is made to a census report of 1950 which, after certain exclusions as computed by counsel, tends to show that about 50% of the employed population in the Baltimore City metropolitan area comprises so-called manual workers. The accuracy of the percentage calculations made by counsel is at least open to question, but even if we accept it as approximately correct it fails to establish that the method of selection has been faulty or discriminatory against any particular class of citizens qualified to be jurors. On the contrary the direct evidence given by the clerks of the court and the present and former Jury Commissioners convincingly establishes that there has been no discrimination either intentional or unconscious in their method of selection of juries.

The personnel of the particular Grand Jury as classified by counsel is that its membership consisted of 3 of professional occupations; 4 of sales-clerical; 2 manual workers; 8 retired persons and 3 housewives. There is no evidence as to the personal economic status of any of these jurors; nor indeed of any member of any of the prior Grand Jury Panels. In percentage it will be noted that of the 23, 12 only were gainfully employed and that the 2 manual workers constituted over 15% of that number and about 9% of the total number of 23 members. This is certainly more than a mere "token" percentage as stated by counsel. And with respect to the percentage analysis of manual workers on prior Grand Juries it is to be noted that the computation is made only from jurors actually serving and not the total number of more than 300 names contained in the jury box from which the selected names were drawn by lot. Nor is there any factual evidence in the particular case with regard to the number of names of respective juries drawn from the box who were unavailable for or were excused from actual service. It is a matter of common judicial experience in the organization of juries for any particular term of court that very many persons for individually considered good reasons are excused from service. And there is direct affirmative evidence in this case from the two clerks of the court who have testified, that some so-called manual workers have been excused from jury service after selection therefor by reason of individual hardship which would result from loss of their daily wage substantially greater in amount than their per diem for jury service. This disproportion of compensation was even more marked until two years ago when Congress increased the per diem compensation of jurors to $7.00 per day. Even this increased amount is much less than the present rate of daily wages earned by many manual workers, such as carpenters, plasterers, plumbers, electricians or mechanics.

The names of the 23 grand jurors who found the indictment in this case were drawn by lot from a box containing 383 names. Counsel for the defendants obtained from the clerk of the court a list of the 383 names with stated occupations, and have classified them into 26 manual workers; 28 professional, 75 sales-clerical workers and the balance, 155 so-called "executives". Percentage-wise the number of manual workers in this group was 9%.

The term "executives" as used by counsel is not clear. Apparently all jurors whose stated employment was described as an officer of a corporation of any nature, whether large or small, and without knowledge of actual duties, whether discretionary, clerical or manual, are included in the class of so-called "executives". It is only speculative as to what economic class they may belong. Often persons called officers of a small corporation may be hardly more than employees, or may actually perform manual or clerical services for the larger part of their time. And the precise line of demarcation between clerical, professional and

executive service cannot be definitely concluded merely from the brief description of occupation stated on the jury lists.

■ The evidence given by the several Jury Commissioners clearly explains their method of selecting names to be placed in the jury box to be drawn by lot from time to time for juries for the respective four terms of court annually. The statutory requirements for jury selection and service are to be found in 28 U.S.C.A. § 1861 et seq. No particular method of selection is prescribed by the statutes; but by judicial decisions it has been established that in selecting names of citizens qualified for jury service, the constitutional principles require that there must be no discrimination against or exclusion from service of jurors otherwise qualified to serve, by reason of race or color or economic status. There is no contention in this case that there has ever been any discrimination by the Jury Commissioners against Negroes on juries, and indeed it is a matter of judicial observation and experience that practically every jury panel, whether Grand or Petit, in this court for many years past has contained Negroes among the membership. Nor is there any evidence or any contention in this case that the Jury Commissioners have either at the present time or in the past failed to observe the procedural statutory requirements. The Jury Commissioners in the federal courts are not required either by statute or by judicial decisions to select names of prospective jurors from any particular list such as voters, registration or taxpayers lists, as may be required by the laws of some States. On the contrary they are expected to and are free to exercise their discretion and judgment as to the best method which will procure competent, intelligent and generally informed citizens of good character without discrimination against or exclusion of any one class. The historical development of jury selection is well and interestingly told by Circuit Judge Learned Hand in the New York case of Dennis v. United States, 2 Cir., 183 F.2d 201, 216–224.

The evidence given by the Jury Commissioners in this case, and particularly by Mr. Charles W. Zimmermann, who was clerk of this court from 1940 to 1951 (and deputy clerk for many years theretofore) and by Mr. Charles M. Janne, who has been clerk of this court since January 1951, and by the present Jury Commissioner, Mr. J. Harry West, and former Commissioners, clearly shows that there has been no discrimination, either intentional or unconscious, against any class of qualified citizens. It is true that names are not selected at random or by chance from lists of unknown persons, but only after inquiry by the Jury Commissioners from persons on whose recommendation credit could reasonably be given. More particularly Mr. Zimmermann, Mr. Janne and Mr. West have obtained lists of names from various organizations such as Credit Mens Association, fraternal organizations, pastors of churches, both white and colored, civic clubs, labor union leaders and others. They have also at times secured recommended names from reputable individuals whom they personally know, including not only men in business occupations but also of personal service status such as carpenters or chauffeurs.

Until very recently objections to the composition of juries upon federal constitutional grounds very generally have been based on the alleged exclusion of Negroes, but no such complaint is here made. It is only quite recently complaints have been made of the alleged exclusion of a particular economic class, as in this case so-called manual workers. As there must be no intentional or systematic exclusion of any class it is true that if the facts of the case establish that there has been such an exclusion, the objection is well made, as was held in Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181, and possibly also in International Longshoremen's & Ware. Union v. Ackerman, D.C. Hawaii, 82 F.Supp. 65, on which counsel for defendants much rely. I note that the latter case was reversed by the 9th Circuit, 187 F.2d 860, apparently without discussion of the jury question. The facts of the instant case are clearly distinguishable from these two cited cases. On the other hand, where intentional or systematic discrimination against or exclusion of an economic

class has not been established, as in the instant case, the complaints have failed. Fay v. New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043; United States v. Dennis, 2 Cir., 183 F.2d 201, 216–224; Local 36 of International Fishermen & Allied Workers of America v. United States, 9 Cir., 177 F.2d 320, 338–342; Fishbaugh v. Armour & Co., 4 Cir., 185 F.2d 541.[1]

United States v. Dennis, supra, presents a factual situation more similar to the instant case than any other of the cases cited or which I have noted. There is certainly less objection to the method of jury selection in the instant case than in the Dennis case. In the latter some part of the criticism of the jury selection was based on alleged discrimination in favor of jurors from certain geographical sections of the area whereby it was contended that there was an unduly large proportion of jurors selected from the more prosperous residential sections of the city. There was also objection made there to the use by the Jury Commissioners of a particular list of prospective jurors compiled by former Grand Juries and used by the Jury Commissioners. Such contentions find no place in the evidence here where it appears that jurors have been selected from all sections of the metropolitan area without even an alleged undue proportion from any one residential section. Nor has there been undue preference given by the Jury Commissioners to any particular list of names, but on the contrary many separate lists have been obtained from different sources without intentional or systematic discrimination against or preference for any particular type or class of otherwise competent jurors.

 The ground of the defendants' objection to the jury is an unusual one. None of the defendants are manual workers. One is a lawyer, one has heretofore been a teacher, and three have been for some years and now are officers of or executives in some part or branch of the Communist Party. Nevertheless the defendants say that they are prejudiced by the failure of the jury to include more manual workers because five at least of them, as Communists, have, they say, been working in the interest of manual workers or working people as a class. The defendants are, of course, entitled to a neutral jury but have no constitutional right to a jury comprising members of a class alleged to be beneficiaries of their activities, unless the evidence in the case discloses, as here it does not, an intentional or systematic exclusion of any class or classes of otherwise competent jurors.

For these reasons the motion to dismiss the indictment on the ground that there was a constitutional defect in the selection of the Grand Jury, is *overruled*.

4. With regard to the defendants' contention as to limitations, the indictment alleges the existence and continuation of the conspiracy within three years prior to and continuing up to the time of the finding of the indictment. Therefore the contention is clearly not sufficient to justify the dismissal of the indictment without evidence on the point. The motion to dismiss the indictment is therefore *overruled*.

### Motion for Inspection of Documentary Evidence

On October 26, 1951 the defendants filed a motion to fix a time and place for the inspection of documentary evidence prior to trial. This was based on Rule 17 of the Rules of Federal Criminal Procedure, 18 U.S.C.A., as construed in Bowman Dairy Co. v. United States, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879. After hearing argument of counsel the request contained in the motion was granted in principle, but the precise and particular terms thereof were to be determined by a written order to be prepared jointly by counsel for both sides and to be approved by the court in the event of final failure of counsel to agree upon the terms in accordance with the views of the

---

1. Other recent cases in the Supreme Court dealing with some of the general aspects of objections to the constitution of juries but not directly in point here are Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181; Francis v. Southern Pac. Co., 333 U.S. 445, 68 S. Ct. 611, 92 L.Ed. 798, and Frazier v. United States, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187.

court as orally outlined at the time of the argument. The terms of the proposed order have not yet been prepared and submitted by counsel but the court is ready at any time to pass the order as agreed upon or to be determined in the event of disagreement of counsel.

## Motion for Continuance

The indictment was filed on August 14, 1951. All but one of the defendants were arraigned on September 28th. The trial date was then tentatively set for November 26, 1951. After hearing counsel on the motion for a continuance filed October 26, 1951, the motion was granted to the extent of postponing the trial date to January 21, 1952. An opinion and order to that effect was filed November 8, 1951.

## Motion for Bill of Particulars

On October 8, 1951 five of the defendants filed a motion for a bill of particulars. Shortly thereafter the sixth defendant likewise filed a similar motion. After hearing argument of counsel on this motion, it is hereby *overruled*.

 The motion is contained in 39 separate paragraphs covering 8 typewritten pages. Exceptions thereto were filed by the United States Attorney. Theretofore on October 4, 1951 the United States Attorney filed an affidavit of 4 typewritten pages giving a general outline of the nature of the evidence proposed to be introduced by the government in the trial of the case with more particular specifications thereof in 11 separate paragraphs. An examination of the motion for particulars as to its nature and contents indicates that what is sought to be obtained thereby is substantially what is the evidence that the government will rely upon to sustain the charge in the indictment. In my opinion the defendants are not fairly entitled to the particulars now demanded. If at the time of the trial it appears that they are taken by surprise by any particular point of evidence, consideration can be given to the subject and, if deemed reasonable, further opportunity given to the defendants to meet or explain it. The motion for a bill of particulars is addressed to the sound judicial discretion of the court. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545. A similar request for a bill of particulars was made and denied by the court in a recent case in the Southern District of New York of a similar nature to the instant case. United States v. Foster, D.C., 80 F.Supp. 479, 486-488. The motion is *overruled.*

## Motion for Severance

██ ██ Each of the six defendants ·has moved for a severance from the other defendants in the actual trial. Counsel have been heard upon this motion. The only ground advanced for the requested severance is the stated view or opinion of counsel that at the trial of the case it will appear that the activities of the defendants were several rather than joint; but the indictment charges a conspiracy in which all six joined. It is true that the inclusion of numerous defendants in one indictment for conspiracy does impose the duty of greater care on the part of the trial judge to closely follow the evidence and to discriminate as to its application to the several defendants. But in advance of hearing the evidence in the case nothing has now been ·shown to justify ordering separate trials rather than a joint trial. The grant or refusal of a motion for severance is addressed to the sound judicial discretion of the judge. I am not persuaded at this time that the defendants are entitled to severance and the motion is therefore *overruled.* United States v. Haupt, 7th Cir., 136 F.2d 661, at page 672; Tincher v. United States, 4 Cir., 11 F.2d 18, certiorari denied, 271 U.S. 664, 46 S.Ct. 475, 70 L.Ed. 1139; Moore v. United States, 7 Cir., 2 F.2d 839, certiorari denied, 267 U.S. 599, 45 S.Ct. 354, 69 L.Ed. 807.

Defendants also made a motion for the suppression before trial of certain evidence which they thought would be offered by the government and which it is said would have resulted from illegal wiretapping. This motion has been heretofore considered and, for the present, overruled for the reasons stated in the original and supplemental opinions filed in the case. It was ordered upon motion of the United States Attorney

that all motions preliminary to trial should be filed by October 26, 1951. All such motions that were so filed have now been considered and ruled upon with the exception of the motion for inspection of documentary evidence, as to which the court is awaiting hearing further from counsel in the case.