**DOW v. UNITED STATES STEEL CORP.**
**No. 10591.**

United States Court of Appeals
Third Circuit.

Argued Feb. 5, 1952.

Decided March 14, 1952.

---

Hymen Schlesinger, Pittsburgh, Pa., for appellant.

Ira R. Hill, Pittsburgh, Pa. (Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for appellee.

Before GOODRICH and HASTIE, Circuit Judges, and MODARELLI, District Judge.

GOODRICH, Circuit Judge.

This is a suit under the Jones Act, 46 U.S.C.A. § 688, for damages claimed to have been suffered by the death of Paul Dow because of the defendant's negligent failure to provide Dow with reasonable medical care when he was ill on the defendant's steamer, "James E. Lose." The case has been before this court before, Dow v. Carnegie-Illinois Steel Corp., 3 Cir., 1948, 165 F.2d 777, and the recital of the facts previously given need not be repeated. The case was tried to a jury and a verdict returned for the defendant.

So far as the facts are concerned the case is one where the jury could well have found the way it did. Paul Dow became ill while working on the defendant's vessel. There is no doubt of that. But it is quite another thing to say that the employer unreasonably failed to provide him with medical attention, especially in view of the sick man's obvious reluctance to be relieved of duty and sent to a hospital. We are left, therefore, with the points raised in the appeal which have to do with the conduct of the trial.

Error is assigned because the jury which tried the case was an improperly selected jury. The challenge is to the "array." Plaintiff, through counsel, says that the jury panel was improperly chosen. The motion of the plaintiff was to strike the entire jury panel. The reasons therefor may be quoted in the words of the plaintiff's attorney. He says:

"1. The method and procedure of selecting trial jurors in this Court does not comply with the law.

"2. The method and procedure of selecting and qualifying trial jurors is not in conformity with the decisions of the Supreme Court.

"3. The panel of jurors and their method of selection indicates that they are not representative of the community nor do they constitute a cross-section thereof.

"4. The jurors have been selected in a discriminatory, unfair and partial manner and excludes either deliberately or by necessary implication important elements of the community such as naturalized foreign born citizens, Negroes, veterans, labor people and many others."

In addition there was a supplemental motion to strike: "for the additional reason that some of the members of the jury panel have been under surveillance and investigation by unauthorized persons and

jury investigation lists have been used by counsel."

The original motion and the supplement thereto were both dismissed without hearing in the District Court. The Chief Judge of the Court to whom the motion was originally made filed an opinion, D.C.1951, 100 F.Supp. 494, describing the selection of jurors in the Western District of Pennsylvania. But this opinion was not, obviously, based on findings of fact in any hearing at which the plaintiff had presented any testimony.

The supplementary motion based upon the alleged surveillance of jurors was likewise dismissed without hearing. There was, however, prior to trial, a questioning of the prospective jurors. The questions were asked by the clerk upon interrogatories propounded by plaintiff's counsel, and over defendant's objection. One of the interrogatories asked, "Has any person interviewed you, or any member of your family or neighbor or acquaintance in connection with your service on the Federal Jury?"

In response to this question some of the jurors raised hands and gave answers. The following is typical: "I was told by a neighbor who lived in the apartment upstairs that she had been approached by someone who claimed to be a Jury investigator. She was asked several questions. I don't know what answers were given."

It appeared to the trial judge that none of the jurors who had been asked any question had served on this panel and he, therefore, dismissed the allegations as irrelevant. We cannot agree with that. After all, the questions about investigation were asked in the presence of all the prospective jurors for this case. If there is anything to the surveillance or intimidation point, it could well be that all the jurors would have felt whatever pressure there was, regardless of whether they were actually asked questions by the alleged investigators or not. If some of the jurors were investigated, the remainder might well think, and reasonably so, that they had been investigated too.

We think that the issues raised by the plaintiff's counsel are such that he should be entitled to present evidence on the point. It is alleged that this motion is being habitually made in cases in which this counsel is involved in the Western District. If a jury list is improperly drawn, or jurors are subjected to improper investigation, that fact should be brought out and the improper practices stopped. On the other hand, if charges are being recklessly or frivolously made, the court has it within its own inherent power to provide such discipline for members of its bar that may be just under the circumstances.

The federal statutes having to do with juries do not give many mandatory directions for compiling lists of prospective jurors. They are explicit about the illegality of discriminatory exclusion on account of race or color. They make certain disqualifications.[1] The statute talks about the function of jury commissioner and court clerk as though a great deal of discretion was vested in those officials.[2] That the dis-

1. 28 U.S.C. § 1861 (Supp.1951). "Any citizen who has attained the age of 21 years and resides within the judicial district, is competent to serve as a grand or petit juror unless:

"(1) He has been convicted in a state or federal court of record of a crime punishable by imprisonment for more than one year and his civil rights have not been restored by pardon or amnesty.

"(2) He is unable to read, write, speak and understand the English language.

"(3) He is incapable, by reason of mental or physical infirmities to render efficient jury service.

"(4) He is incompetent to serve as a grand or petit juror by the law of the State in which the district court is held."

2. The statutes provide merely that, "The jury box shall from time to time be refilled by the clerk of court, or his deputy, and a jury commissioner, appointed by the court." 28 U.S.C. § 1864 (Supp. 1951).

Note also that the same statute also provides only the simple direction, "The jury commissioner and the clerk, or his deputy, shall alternately place one name in the jury box without reference to party affiliations, until the box shall contain at least 300 names or such larger number as the court determines." Ibid.

cretion is not unlimited is likely. For example, there is a statute which puts in the judicial council for each circuit the responsibility for the general supervision of the administration of the federal judicial system of the circuit.[3]

If a responsible member of the bar charges that the method of selecting jurors is such that his client may not have a fair trial, he should have a chance to prove it. He cannot prove it if a motion based upon the assertion of such a situation is overruled without hearing.

The same proposition holds true for the supplementary claim of jury surveillance. The quoted statement of one of the panel, set out above, shows how little information we have with regard to what investigation was made, if any. Counsel alleges that reports of investigations of jurors are sold in the corridor of the Court House in Pittsburgh. We do not know that as a fact except through the assertion made in argument. Nor do we know what is on the lists, if any. We do not know what questions have been asked jurors, prospective jurors or their acquaintances and neighbors or by whom.

This court quite realizes the importance of protecting jurors from intimidation. The Sinclair case[4] was cited to us. It is not in point here on the facts. But the general proposition that a jury must be free to decide cases submitted to it on the law and the facts without outside pressure is one to which we heartily subscribe.

We cannot answer the question which counsel raises on the merits until we know all the facts surrounding the alleged investigation. If a list of jurors was passed around which contained only their names, addresses and occupations, it is a little hard to see how anybody could complain about the distribution of what is public information anyhow. If it contained more than that, what was it? Here again we cannot determine whether the plaintiff has ground for legitimate complaint until we know what happened. On this matter, as on the method of drawing a jury, plaintiff should have an opportunity to present evidence and prove facts.

It is now quite a number of months since the preliminary motions in this case were heard and decided. It may well be that individuals on this particular jury panel may be difficult or impossible to locate. We think the appellant's point with regard to jury selection and jury surveillance can be properly developed if he shows present conditions of the type he claims existed at the time of these motions and then shows continuity between the methods used now and the practices of that time.

When we get to the questions involved in the trial itself, there need not be very much said. Plaintiff alleges that the court's charge on the subject of contributory negligence was error. We have read it and we have read it in its position in the entire charge. It is not as clear as the statement by the Supreme Court in the excerpt cited from Norfolk & Western Ry. v. Earnest, 1913, 229 U.S. 114, 122, 33 S.Ct. 654, 657, 57 L.Ed. 1096,[5] but we think that the jury understood it. In addition, it should be said, as defendant points out, that since the jury returned a verdict for the defendant, it necessarily did not get to the question of contributory negligence on the part of the plaintiff. The error, if one had existed, was harmless.

See the admirable discussion by Judge Chesnut in United States v. Frankfeld, D.C.Md.1951, 101 F.Supp. 449, 452.

3. 28 U.S.C. § 332 (Supp.1951) "* * * Each judicial council shall make all necessary orders for the effective and expeditious administration of the business of the courts within its circuit. The district judges shall promptly carry into effect all orders of the judicial council."

4. Sinclair v. United States, 1929, 279 U.S. 749, 49 S.Ct. 471, 73 L.Ed. 938.

5. The excerpt reads, "* * * the statutory direction that the diminution shall be 'in proportion to the amount of negligence attributable to such employee' means * * * that, where the causal negligence is partly attributable to him and partly to the carrier, he shall not recover full damages, but only a proportional amount, bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both * * *."

The plaintiff asked for a long list of instructions, many of which the judge refused. He should have refused them because they attempted to narrow the jury's attention to specific points and would have unnecessarily complicated that body's consideration of the whole case. Some of them are irrelevant, others are inaccurate. There was no error in failing to give them.

 Finally, complaint is made that the jury was improperly charged on proximate cause. We do not think that the direction about proximate cause was a model of exactness. The court said "proximate cause means that Mr. Dow's ailments and death would not have been suffered except for that." If the quoted sentence means that plaintiff can recover if loss would not have happened "but for" the defendant's negligent act, it is much too liberal to the plaintiff. This question has been discussed innumerable times in legal literature and we do not need to harrow further the well tilled field. See, however, Jeremiah Smith, Legal Cause in Actions of Tort, 25 Harv. L.Rev. 103, 223, 303 (1911–12) and for a later discussion, Prosser on Torts, § 46.

There is a statement of the test of proximate cause in the Restatement of Torts which can be easily found and is not too long to quote. It runs as follows: "The negligence must also be a substantial factor as well as an actual factor in bringing about the plaintiff's harm. The word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense * * *." Restatement, Torts, § 431, Comment a.

Whatever inaccuracy there was in the judge's charge, however, made it too favorable to the plaintiff. That is not a subject for reversal on the plaintiff's complaint, clearly.

The judgment of the District Court will be vacated in order that the case may go back for hearing on the plaintiff's objections to the selection of jurors and the alleged intimidation of them. If he wins on that it will show that the situation was not such as to give a fair trial. But if the evidence presented by the plaintiff does not support the charges thus made, judgment should be entered for the defendant in accordance with the jury's verdict. The reasons for this have already been covered in the statement of the alleged errors which plaintiff says occurred during the trial of the case.

The judgment of the District Court will be vacated and the case remanded for further proceedings in accordance with this opinion.