**UNITED STATES v. MESAROSH et al.**

Cr. 13531.

United States District Court
W. D. Pennsylvania.

Oct. 10, 1952.

Edward Boyle, U. S. Atty., Irwin A. Swiss, Asst. U. S. Atty., Pittsburgh, Pa., William G. Hundley, Kevin T. Maroney, Washington, D. C., for plaintiff.

Steve Nelson, Benjamin Lowell Careathers, William Albertson and James Hulse Dolsen, pro se.

Horace Meldahl, Charleston, W. Va., Hymen Schlesinger, Pittsburgh, Pa., for Weissman.

Ralph Powe, Brooklyn, N. Y., Hymen Schlesinger, Pittsburgh, Pa., for Onda.

STEWART, District Judge.

The six defendants in this case were indicted for conspiracy to commit offenses against the United States prohibited by the Smith Act, 18 U.S.C. § 2385. Two of the defendants are represented by counsel and four are not as yet. Motions have been filed by counsel on behalf of the particular defendants they represent, but as we stated at the time of the oral argument all motions have been considered as filed on behalf of all defendants to the extent appropriate. In all, twenty-two pre-trial motions have been filed and argued in this case. They fall into nine general categories. We shall discuss each category separately and reference will be made therein to the particular motions only where distinctions between the related motions require it.

### I.

Two motions for a bill of particulars have been filed pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, 18 U.S.C. and together they seek 194 itemized particulars. Under this Rule and under many decisions, a motion of this nature is addressed to the discretion of the court, Wong Tai v. United States, 1927, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545, recognizing, however, the proper purposes and scope of a bill of particulars. These have been summarized by Judge Hulbert of the United States District Court for the Southern District of New York in ruling on substantially similar motions in the case of United States v. Foster, S.D.N.Y.1948, 80 F.Supp. 479, as follows, at page 486:

"The purpose of a bill is to inform the accused of the nature of the charge with sufficient precision to enable him

to prepare for trial, to prevent surprise, and to plead his acquittal or conviction in bar of any prosecution for the same offense. Wong Tai v. U. S., supra. It is not the function of a bill to compel the Government to disclose in advance of the trial the evidence by which it will attempt to prove the charges alleged in the indictment."

■ An examination of the demands here convinces us that these motions are in the nature of fishing expeditions into the Government's evidence; that they seek to limit the Government's proof; and that they are not restricted to an inquiry into the charges contained in the indictment. Further, the indictment in this case contains sufficient particularity to enable the defendants adequately to prepare for trial. Substantially identical motions were made and denied in the analogous cases of United States v. Fujimoto, D.C. Hawaii 1952, 102 F.Supp. 890; United States v. Flynn, D.C. S.D.N.Y.1951, 103 F.Supp. 925; United States v. Frankfeld, D.C.Md.1951, 101 F. Supp. 449; United States v. Foster, supra. The motions for a bill of particulars will be denied.

## II.

■ Several motions seeking discovery have been filed. Defendants indicate that one of these motions is filed pursuant to Rules 16 and 17(c) of the Federal Rules of Criminal Procedure. However, it seems clear that, with respect to the discovery aspects of these motions, Rule 16 governs. Rule 17 is not a discovery rule but provides for the usual subpoena *ad testificandum* and *duces tecum*, which may be issued by the Clerk, with the provision that the court may direct that the materials designated in the subpoena *duces tecum* be produced at a specified time and place for inspection by defendant. Rule 16 provides a very limited discovery for the benefit of defendants where books, records or objects necessary to their defense are in the possession of the prosecution, and as pointed out by the Supreme Court of the United States in

Bowman Dairy Co. v. United States, 1951, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 it was not intended to give a limited right of discovery by Rule 16 and then by Rule 17 to give a right of discovery in the broadest terms. Therefore, before a defendant is entitled to discovery, certain requirements, which are apparent from Rule 16, must be met, viz.:

(1) The evidence must consist of tangible objects, i. e., books, papers, documents, etc.

(2) These objects must belong to defendants or have been obtained from the defendants or from others by seizure or by process.[1]

(3) There must be a showing that the objects sought are material to the preparation of the defense.

(4) There must be a showing that the request is reasonable.

Defendants have made no attempt to show that their request meets any of these requirements. Instead, as an examination of the motions will indicate, they seek to embark upon a broad fishing expedition without this requisite showing. For this reason, we will deny these motions insofar as they relate to discovery.

■ One of these motions asks the Court to grant an order directing the issuance of a pre-trial subpoena requiring the production of "all books, documents, papers, materials and objects which (a) have been presented to the Grand Jury, or (b) are to be offered as evidence on the trial, and (c) the names and addresses of all government witnesses who testified before the Grand Jury". Defendants state they have filed this motion pursuant to Rules 16 and 17(c). As we have already pointed out, insofar as this motion seeks discovery under Rule 16, it must be denied. Further, we think that this motion must be denied in its entirety even though considered under Rule 17(c). Rule 17(c) is not a discovery rule. Its purpose is to shorten the trial and to make it possible to require the production before the trial

1. United States v. Black, D.C.N.D.Ind.1946, 6 F.R.D. 270.

of documents subpoenaed for use at the trial. Bowman Dairy Co. v. United States, supra; United States v. Maryland and Virginia Milk Producers Ass'n, D.C.D.C. 1949, 9 F.R.D. 509. Counsel for defendants rely on the decision in the Bowman case to support their motion. While it seems clear that the Bowman decision would support the granting of a pre-trial investigation of items (a) and (b) requested in the motion, if such motion represented a good faith effort to obtain evidence, it is equally clear that the matter is one resting in the sound discretion of the trial court as the language of the Rule itself indicates. United States v. Schiller, 2 Cir., 1951, 187 F.2d 572. This latter proposition is recognized by the Supreme Court of the United States in the Bowman case. Furthermore, the decision in the Bowman case supports the granting of a pre-trial inspection only to the extent that a good faith effort is made to obtain evidence.

■■ An examination of this motion in the light of the related moving papers leads to the conclusion that this does not represent a bona fide effort to obtain evidence to be used for defense, but, rather, is an attempt to learn the Government's case under the guise of pre-trial inspection.

The defendants have no right to a list of names of the witnesses who appeared before the Grand Jury or of those who will appear at the trial on behalf of the Government. The Federal Rules of Criminal Procedure give no such right, and neither does the weight of decisional authority in conspiracy cases at least, United States v. General Petroleum Corp. of California, D.C.S.D.Cal.1940, 33 F.Supp. 95. Finally, it does not appear that the purpose of Rule 17(c) would be served by requiring a pre-trial production of the documents and objects requested in these motions or that the defendants will be prejudiced by a refusal to do so. For these reasons, the motion specifically based on Rule 17(c) and the other discovery motions will be refused even though treated as a request under Rule 17(c). At this point, it should be noted that this matter is not properly before us at this time since no subpoena has been issued commanding the production of the documents and objects referred to in the motions. However, we have considered the motion as though a subpoena had been issued since to do otherwise would result in delay of the trial.

### III.

■ Motions have been filed by defendants requesting an order suppressing all evidence allegedly obtained by illegal means such as wire tapping, extraction from the mails, etc. These motions must be denied for the reason that the affidavit filed by defendants in support of these motions is indefinite, fails to allege any facts showing taint in the Government's evidence and fails to meet the requirements of solidity enunciated in Nardone v. United States, 1939, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307. At the most, this affidavit sets forth a suspicion by defendants that some evidence was illegally obtained. This does not justify the granting of a hearing on this matter to determine if the motion should be granted, particularly in view of the affidavit filed by the United States Attorney to the effect that the evidence presented to the Grand Jury and that to be adduced at the trial was not illegally obtained through wire tapping, microphone surveillances, and mail interceptions, or from information thus acquired. Finally, similar motions based on similarly vague and indefinite affidavits have been considered and refused in the analogous cases of United States v. Fujimoto, supra; United States v. Flynn, supra; United States v. Frankfeld, supra. For these reasons, the motions to suppress will be denied.

### IV.

■ Defendants Careathers and Weissman have filed motions seeking severance of their trials from the trial of the other defendants and each asserting that each will be prejudiced if compelled to stand trial with the defendants Stephen Mesarosh, also know as Steve Nelson, James Hulse Dolsen and Andrew Rudolph Onda. This motion will be considered on behalf of defendant Albertson also. In an

affidavit accompanying his motion, defendant Careathers states that these three defendants have been convicted in the courts of the Commonwealth of Pennsylvania for violation of the State Sedition Act, 18 P.S. § 4207, which, according to the affidavit, "bears a solid and a most striking resemblance to the specific substantive offence herein". Defendant Weissman's motion, although unaccompanied by affidavit, is based on the same facts. Both argue that they will be prejudiced by being forced to stand trial with three defendants who have been convicted in a state case on a charge which they allege to be substantially the same as that charged in the indictment in this case. Rule 14 provides that the Court "may * * * grant a severance of defendants" if it appears that a defendant is prejudiced by a joinder of defendants. It is clear from the language of the rule and from cases decided before and since its promulgation that the granting or denial of a severance is within the discretion of the trial judge. Stilson v. United States, 1919, 250 U.S. 583, 40 S.Ct. 28, 63 L.Ed. 1154; Dauer v. United States, 10 Cir., 1951, 189 F.2d 343. Moreover, in conspiracy cases where the charge against all defendants may be largely proved by the same evidence, a severance should not be granted except for very strong reasons. United States v. Cohen, 2d Cir., 1941, 124 F.2d 164; United States v. Atlantic Commission Co., D.C.E. D.N.C.1942, 45 F.Supp. 187. Regardless of whether each defendant herein be tried alone or jointly with the other defendants, evidence relating to acts and statements of all the conspirators in furtherance of the conspiracy would be admissible against each. We are not convinced that defendants Careathers, Weissman and Albertson will be denied a fair trial if tried jointly with their alleged co-conspirators. Furthermore, their rights can be adequately protected by the Court at the trial.

## V.

Defendant Albertson seeks change of venue to the Eastern District of Michigan and defendant Weissman asks for change of venue to the Southern District of West Virginia. The principal basis for each motion, according to allegations of the respective defendants, is that there exists in this locality so great a prejudice against them and their co-defendants that a fair trial would be impossible here. Other bases are asserted to support these motions, but these obviously have no merit and consequently require no discussion. Rule 21(a) governs with respect to a request for a change of venue based on prejudice and provides that:

> "The court upon motion of the defendant shall transfer the proceeding as to him to another district or division if the court is satisfied that there exists in the district or division where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in that district or division."

We are not convinced that there does exist in this district so great a prejudice against defendants that they cannot obtain with the assistance and protection of the Court a fair and impartial trial here. With respect to community prejudice, it is pertinent to note the statement of Judge Learned Hand in United States v. Dennis, 2 Cir., 1950, 183 F.2d 201 at page 226:

> "Next, it is urged that it was impossible in any event to get an impartial jury because of the heated public feeling against Communists. That such feeling did exist among many persons —probably a large majority—is indeed true; but there was no reason to suppose that it would subside by any delay which would not put off the trial indefinitely. The choice was between using the best means available to secure an impartial jury and letting the prosecution lapse. It was not as though the prejudice had been local, so that it could be cured by removal to another district; it was not as though it were temporary, so that there was any reasonable hope that with a reasonable continuance it would fade. Indeed, as it turns out, it is probable that the trial was at a less unpropitious time

than any that has succeeded it, or is likely to follow. Certainly we must spare no effort to secure an impartial panel; but those who may have in fact committed a crime cannot secure immunity because it is possible that the jurors who try them may not be exempt from the general feelings prevalent in the society in which they live; we must do as best we can with the means we have."

## VI.

 Defendants Nelson and Dolsen have filed motions to dismiss the indictment against them contending that this Court has no jurisdiction to try them since they have been tried and convicted in the courts of the Commonwealth of Pennsylvania for an offense which they assert is in substance the same offense charged here. These motions raise the question of double jeopardy under the Fifth Amendment to the Constitution of the United States. Two other contentions are made in support of these motions, but they are so obviously without merit that they require no discussion. These motions are, of course, equally applicable to the defendant, Onda, and will be considered on his behalf as well. The double jeopardy forbidden by the Fifth Amendment "is a second prosecution under authority of the federal government after a first trial for the same offense under the same authority." United States v. Lanza, 1922, 260 U.S. 377 at page 382, 43 S.Ct. 141 at page 142, 67 L.Ed. 314. The same act or series of acts may constitute an offense equally against the sovereignty of the United States and against the sovereignty of a particular state. United States v. Lanza, supra; Cross v. North Carolina, 1889, 132 U.S. 131, 10 S.Ct. 47, 33 L.Ed. 287.

Consequently, these motions will be denied.

## VII.

Other motions to dismiss the indictment urge five basic reasons in support thereof:

(1) No legally sufficient evidence was presented to the Grand Jury to support the indictment.

(2) The indictment charges no offense against the United States.

(3) The Smith Act is unconstitutional.

(4) The applicable statute of limitations bars this prosecution.

(5) The indicting Grand Jury, the panel and the master list from which the members of the Grand Jury were drawn were improperly selected and do not constitute a fair, impartial and representative cross-section of the community.

Each of these reasons will be considered separately.

### (1)

 Defendants presented no evidence to support their first contention—it was based entirely on conjecture. However, in an effort to determine if there was any basis in fact for this contention, we directed the United States Attorney to make a transcript of the Grand Jury proceedings available to the Court, though not to defendants. A reading of the transcript makes it clear that there is no basis in fact for defendants' first contention. There is legally sufficient evidence to support the action of the Grand Jury in returning the indictment.

### (2)

 Defendants' second contention is without merit also. Rule 7(c) provides that the indictment shall contain "a plain, concise and definite written statement of the essential facts constituting the offense charged." We think this indictment meets this test. The indictment charges a conspiracy "to commit offenses against the United States prohibited by Section 2 of the Smith Act (54 Stat. 671), 18 U.S.C. (1946 ed.) Section 10 and 18 U.S.C. (1948 ed.) Section 2385, in violation of U.S.C. Title 18, Section 11 (1946 ed.), being Section 3 of the said Smith Act while said section of said act remained effective, and thereafter in violation of U.S.C., Title 18, Section 371 (1948 ed.)", and alleges: (a) a conspiracy by and among the six defendants; (b) a conspiracy with others, not defendants herein, 17 of whom are named; (c) the beginning date, duration and place of occur-

rence of the conspiracy; (d) the objects of the conspiracy and some of the means, in detail, to be employed in accomplishing these objects; and (e) 16 separate overt acts including a reference to a particular defendant who participated therein, the nature, date and place of occurrence of the act. This constitutes a sufficient allegation of an offense against the United States.

The defendants argue that the indictment must expressly allege that the offense charged constituted a "clear and present danger" to the government of the United States or be subject to dismissal since prosecution for the offense here charged would be forbidden by the Constitution of the United States if a "clear and present danger" is not shown to exist. We think that this argument represents a misconception of the function of an indictment. The indictment does allege an offense and under those allegations, it is clear that sufficient evidence may be presented at the trial to prove that a "clear and present danger" to the safety of the government of the United States does exist. This is sufficient to sustain the indictment herein.

Further, it is apparent that the indictment in this case was modeled after that in the Dennis case. Of that indictment, Judge Learned Hand stated: "it is patent on the merest inspection that the indictment is sufficient". United States v. Dennis, 2 Cir., 1950,. 183 F.2d 201 at page 207, affirmed, 1951, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137. The only distinctions of any consequence between the Dennis indictment and this are that 16 overt acts are alleged in the indictment here whereas none was alleged in the Dennis indictment, and, in describing the objects of the conspiracy, the phrase "as speedily as circumstances would permit" is added at two places in the first paragraph of the indictment herein. A *fortiori*, this indictment is sufficient.

Similar contentions relating to substantially similar indictments have been held to lack merit in the cases of United States v. Fujimoto, supra, United States v. Flynn, supra, and United States v. Frankfeld, supra.

(3)

Asserting that no "clear and present danger" to the safety of the Government of the United States existed on the date of the finding of the indictment herein, defendants argue that the Smith Act is unconstitutional as applied to the facts of this case. In addition, they press all the arguments of unconstitutionality raised by the defendants in the Dennis case and held invalid therein at all judicial levels culminating finally in the decision by the Supreme Court of the United States, 1951, 341 U.S. 494, 71 S.Ct. 857, 858, 95 L.Ed. 1137. This decision is binding here. It is true that the Supreme Court of the United States and the Court of Appeals for the Second Circuit relied upon judicial notice of the "times" and world conditions in determining the existence of a "clear and present danger". Likewise, we take judicial notice that these "times" or world conditions had not so changed as to preclude a like determination on January 18, 1952, the date of the finding of the indictment herein, but rather would more strongly support it on that date than on the date of the Dennis indictment. We conclude, therefore, that this contention is without merit. Similar motions have been refused in the cases cited above.

(4)

Defendants contend that this indictment is barred by the applicable statute of limitations which provides that "no person shall be prosecuted * * * unless the indictment is found or the information is instituted within three years next after such offense shall have been committed." 18 U.S.C. § 3282. This contention overlooks the basic principle of law that, with respect to a conspiracy charge, the period of limitation is computed from the date of the last overt act of which there is appropriate allegation and proof even though some of the earlier overt acts may have occurred more than three years prior to the indictment. Fiswick v. United States, 1946, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196; Brown v. Elliott, 1912, 225 U.S. 392, 32 S.Ct. 812, 56 L.Ed. 1136; United States v. Flynn, supra. The indictment herein al-

leges that the conspiracy commenced on or about April 1, 1945 and continued thereafter up to and including the date of the indictment and alleges 11 overt acts which occurred within the 3-year period prior to the finding of this indictment. Consequently, this contention lacks merit.

### (5)

▇▇▇ Defendants' final contention in support of their motions to dismiss relates to the method of selecting jurors in this district. The theory of their challenge to the jury panel, as stated by defendants' counsel in their written brief submitted to the Court in support of this motion is "that the Grand Jury system obtaining in this Court is administered and was so administered up to the return of this indictment so as to (a) deliberately and systematically limit to token inclusion manual workers, Negroes, residents of the poorer sections of the community, and those of humble station in life, among others, when the aggregate comprised the overwhelming majority of those in the Western District qualified to serve and (b) deliberately to favor those who constitute the social, business and political contacts and/or friends of the jury officials, thereby necessarily making impossible an impartial, representative, and democratic jury system." The governing rule with respect to this question has been stated by the Supreme Court of the United States in Thiel v. Southern Pacific Co., 1946, 328 U.S. 217 at page 220, 66 S.Ct. 984 at page 985, 90 L.Ed. 1181 as follows:

> "The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community. Smith v. Texas, 311 U.S. 128, 130, 61 S.Ct. 164, 165, 85 L.Ed. 84; Glasser v. United States, 315 U.S. 60, 85, 62 S.Ct. 457, 471, 86 L.Ed. 680. This does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community; frequently

such complete representation would be impossible. But it does mean that prospective jurors shall be selected by court officials *without systematic and intentional exclusion* of any of these groups." (Emphasis added.)

Many other cases are to the same effect. Frazier v. United States, 1948, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187; Fay v. New York, 1947, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043; United States v. Fujimoto, supra; United States v. Flynn, supra; United States v. Frankfeld, supra; United States v. Foster, supra. In these last four cases, like motions were made and denied. We granted a hearing on this phase of defendants' motions to dismiss. At this hearing, which lasted six complete days, no evidence was produced supporting defendants' contention as set forth in their brief and quoted herein or which would establish a violation of the governing rule as set forth in Thiel v. Southern Pacific Co., supra. On the contrary, the present and two former Jury Commissioners, the Clerk and Deputy Clerk of this Court, testified, as defendants' witnesses, that they did not attempt or intend to exclude any class or group but rather that they made many efforts to secure cross-sectional representations of the community. Cf. Fay v. New York, 332 U.S. 261 at page 277, 67 S.Ct. 1613, 91 L.Ed. 2043. Other evidence presented by the defendants supported this testimony. In addition, examination of the questionnaires executed by the members of the indicting grand jury panel discloses that, in fact, it was composed of persons of diverse occupations, racial and nationality origins, educational background and geographic locations. Although, as we realize, the test on such a motion is not what a particular jury represents, this is evidence which can be considered with the other evidence presented by defendants; and when so considered, it supports the testimony of the Jury Commissioners, Clerk and Deputy Clerk. Considering the evidence referred to above along with all the remaining evidence, we find, as a fact, that the system of jury selection prevailing in this district now and at the time of the selection of the indicting

Grand Jury panel is not and was not administered so as to result in an intentional or systematic exclusion of any group nor, deliberately and systematically, to limit any group to mere token inclusion. Consequently, defendants' motion fails in this regard.

One final point relating to this motion requires discussion. At the present time, at the time the indicting Grand Jury was selected and for some time prior thereto, the system of jury selection prevailing in this district has included the mailing of questionnaires to prospective jurors by the Clerk or Jury Commissioners. Many of the questions relate to the statutory qualifications of the juror. However, some of the questions do not so relate, and it is with respect to these questions that defendants raise another objection. Of course, defendants argue that the mere use of the questionnaire is improper as constituting a pre-trial investigation and surveillance of prospective jurors condemned by the Supreme Court of the United States in Sinclair v. United States, 1929, 279 U.S. 749, 49 S.Ct. 471, 73 L.Ed. 938. In addition, they object to certain specific questions as being in violation of the constitutional rights of the prospective jurors guaranteed under the First and Fifth Amendments to the Federal Constitution. However, counsel does not point out to the Court how this last proposition supports their motion to dismiss the indictment. We have before us a question of whether defendants have been denied the right to be indicted by a fair and impartial Grand Jury, not the question of whether a certain juror's rights have been contravened.

■ Defendants' first contention with respect to the questionnaire is based on a misapplication of the principle enunciated in Sinclair v. United States, supra. In that case, by procurement of the defendant, the jurors throughout the progress of the trial were systematically shadowed by a corps of private detectives; and, in addition other investigations concerning the jurors were made. Here, in the exercise of their discretion in the manner and method of securing names [2] for their respective jury master lists, the Clerk and Jury Commissioner sent a questionnaire to the prospective jurors. Clearly, this is not the surveillance condemned in Sinclair v. United States, supra.

Further, the use of a questionnaire in such a case as this has been inferentially approved, at least, by the Supreme Court of the United States in Fay v. New York, supra. There it was urged that eliminations of prospective jurors resulted unfairly from use of a questionnaire which asked a particular question. The Court merely considered the propriety of the question and refused the contention without indicating in any way that the use of the questionnaire as such was improper. In United States v. Fujimoto, D.C., 102 F.Supp. 890 at page 895, Judge McLaughlin, in considering a contention similar to this, states:

"* * * the jury system is not a mechanical process and hence the Jury Commissioners are entitled to ask relevant questions as a basis for exercising their judgment and discretion."

Consequently, we conclude that the mere use of the questionnaire was not improper.

Whether some of the questions were improper is the remaining question. Obviously, the questions relating to statutory qualifications were proper. While, as we have indicated previously, we see no merit in defendants' contention as stated with respect to the remaining questions, we think that some discussion is required concerning one of these questions for another reason. This question was as follows:

2. That the manner and method of securing names is within the sound discretion of the Clerk and Jury Commissioner and will not be held invalid so long as the statutory requirements are met and so long as there is no intentional or systematic exclusion of any group seems well settled from many cases and particularly from Thiel v. Southern Pacific Company, 1946, 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181.

"Are you opposed to the American form of Government?"

The Deputy Clerk and one of the Jury Commissioners testified that they recalled a very few affirmative replies to this, but in those instances, they did not include that person's name on their master list. The question, though not specifically raised by defendants, then becomes one of determining whether this represented an intentional and systematic exclusion of a group in violation of the rule of Thiel v. Southern Pacific Co., supra. First, the testimony of the jury commissioner and deputy clerk indicated that they paid no particular attention to this question and that they did not specifically check the answer to this question on each questionnaire. We do not think that the evidence established that this represented a *system* of exclusion. Rather the evidence indicates that there was no such system, but that this was one thing considered when noted, by the Clerk and Jury Commissioner along with other matters in the exercise of their discretion in selecting competent jurors. Further, as stated by the Supreme Court of the United States in Fay v. New York, 332 U.S. 261 at page 278, 67 S.Ct. 1613 at page 1623, in reference to the propriety of a question included on a questionnaire:

"While it does not commend itself, it appears to be an administrative ineptitude of no constitutional significance and of no prejudice to these defendants."

The objection to the remaining questions has no merit since these are, at most, surplusage. The observation of the Supreme Court in the Fay case is equally applicable to these. Consequently, it appearing to us that none of the contentions argued by defendants in support of their numerous motions to dismiss the indictment has any merit, these motions will be denied.

## VIII.

 One motion filed on behalf of defendant Weissman requesting leave to sub- mit a questionnaire containing 58 interrogatories to each prospective petit juror remains for disposition. Counsel presents no adequate reason to the Court to sustain this unusual procedure in lieu of the ordinary oral examination of jurors on *voir dire*. Therefore, we will deny it. However, we will consider this motion also as a request for our approval of proposed questions to be propounded orally to the petit jurors on the *voir dire*. As to this we will reserve decision so that other questions may be propounded for the remaining defendants. It is our intention to conduct the *voir dire* in Open Court. We direct all parties to submit to the Court prior to the date of the commencement of the selection of petit jurors for the trial of this case any questions which they desire the Court to ask the prospective jurors.

## IX.

This disposes of all the motions with the exception of defendant Onda's motion for severance and continuance of his case because his physical condition is such that to stand trial now would seriously impair his health and endanger his life. We will not rule on this motion at this time since the medical reports of the physicians who examined or treated him have not been received.

Consequently, the case is now ready for trial with respect to five of the defendants at least, and since the motion filed on behalf of defendant Onda will be disposed of within the next few days, we will direct all parties to be prepared on October 14, 1952, to begin the selection of a jury for trial of this case. This is in accordance with notice given by us to all parties at the hearing held on September 22, 1952 when we stated that in the event all motions should be overruled, we would begin to select a jury in this case on October 14, 1952.

An appropriate order will be entered.