**UNITED STATES v. HEATH** (two cases).
Cr. Nos. 10480, 10509.

United States District Court
D. of Hawaii.
March 20, 1952.

Nat Richardson, Jr., Asst. U. S. Atty., District of Hawaii, Honolulu, T. H., for plaintiff.

Hyman M. Greenstein, Honolulu, T. H., for defendant.

McLAUGHLIN, District Judge.

In these two consolidated cases the defendant moved to dismiss the charges upon the ground that the Grand Jury which returned both indictments was not validly constituted.

The sole basis for this motion is an order made Feb. 11, 1952, by the Chief Judge of this Court, a copy of which is appended.

The motion must be denied, and for the following reasons:

1. Chief Judge Metzger's order of Feb. 11, 1952, is exclusively predicated upon a motion on file since Nov. 29, 1951, in Criminal case No. 10,495, U. S. v. Fujimoto, D.C., 101 F.Supp. 293—a case upon the criminal calendar assigned by him to this division;

2. At the time of his unprecedented order, Judge Metzger knew or should have known that the question of law presented by the motion in Criminal case No. 10,495 was pending in this division and with respect thereto the movants had until Feb. 12 to file additional material to make out a prima facie case entitling them to a hearing. This statement is predicated upon Judge Metzger's subsequent testimony upon the motion that he had a copy of my ruling of Feb. 5, 1952, 102 F.Supp. 890 and upon his admission further that he read the newspapers which widely publicized every move

made by both parties in Criminal case No. 10,495;

3. Judge Metzger's order is a judicial nullity for not only was no issue respecting the Grand Jury or a trial jury before him, but so, too, were there neither parties nor evidence before him. Indeed, interestingly the only case on Feb. 11 tentatively or otherwise scheduled for trial in the whole Court was Criminal case No. 10,495, which was then set for trial Feb. 26 upon pleas of not guilty entered by the Court, providing the defendants did nothing further on or before Feb. 12 concerning their Grand Jury attack. Significant also is the fact that on Feb. 12 the defense in Criminal case No. 10,495 relied upon Judge Metzger's Feb. 11 order, and this defendant and the defendants in Criminal case No. 10,495 interpret his order alike—and as I would if it were valid. Contrariwise, Judge Metzger, as will be indicated below, deems his order valid but as not affecting a single pending case in the entire Court;

■ 4. No express or implied power is granted a chief judge to affect administratively, directly or indirectly, litigation assigned to and pending before another judge of the court. 28 U.S.C.A. §§ 136, 137, 756.

■ 5. The Chief Judge's testimony upon a hearing of the motion in Criminal case No. 10,495 reveals that he had neither sound legal nor administrative reason to support his order. If the jury list from whence came this Grand Jury was not a legal cross-section of those in the community qualified to be considered for jury. duty as defined by Supreme Court decisions, then the list was invalid, whether frankly so labeled by him or not. A good Grand Jury could not possibly result from an invalid list. Ballard v. United States, 1946, 329 U.S. 187 at page 195, 67 S.Ct. 261, 91 L.Ed. 181. Language to the effect that the use of the legal tag "valid" or "invalid" under these circumstances is inappropriate when one is simply seeking to bring about an improvement in advance of the forthcoming new term starting Apr. 14—or that it may be legally possible to get a perfectly good Grand Jury from a bad list—is not persuasive as it is patently unsound in point of law.

■ For these reasons I hold Judge Metzger's order of Feb. 11, 1952, to be *coram non judice* and hence void.

I further hold also that insofar as the criminal calendar assigned to me is concerned this order is administratively ineffective.

Accordingly, this motion, squarely posited as it is upon said order of Feb. 11, is denied.

### Order of Judge Metzger
### In the Matter of Selection of Jurors.

To the Clerk of the Court, William F. Thompson, Jr., (Clerk), and Leon K. Sterling, Sr., Jury Commissioners:

Serious criticism and complaint has been filed in the Court in Criminal Case No. 10,495, U. S. v. Fujimoto, D.C., 101 F.Supp. 293, regarding the selection of the present list of jurors whose names are now in the jury box, charges supported by affidavit and buttressed by numerous detailed exhibits (153 pages), alleging, with other complaints, the following:

1. That of the 418 names which were in the jury box on October 25, 1950, 276 were selected from the 4th representative District (generally known as the "Manoa silk stocking" District) having at the time of the last general election 28,843 registered male voters, while only 54 were selected from the 5th District (known as the "country and working men's" District) on Oahu which had 22,186 registered male voters at the time of the last general election;

2. That of the many thousands of cane and pineapple industry workers (field and factory) in the Territory but one was selected from cane and one from pineapple workers below the classification of executives, supervisors, foremen, professional technicians and personnel staffs, although many were qualified and available.

3. That an overwhelming proportion of the jury list is composed of top-notch employees and officers in the larger and most influential business, commercial, and industrial corporations centered in Honolulu, and over 10% from the Chambers of Commerce;

4. That Caucasian, although greatly inferior in number of voting citizens, (only 18.7%), are greatly preponderant on the jury list (about 70%), and several other charges of unbalance as to races, economic, and social classes, and other matters, are made.

These charges were brought before Judge McLaughlin on February 4, 1952, in a Motion to Dismiss the indictment in Criminal Case No. 10,495 and are incorporated in the record of that case. Judge McLaughlin dismissed the Motion without a hearing, upon the stated ground that the judges had heretofore reviewed the methods pursued by our commissioners and finding them without fault or lacking in faithful attention had continued to draw and install juries from the list, as modified from time to time, without considering further investigation necessary, and that the chief judge had drawn and charged the very jury that brought in the indictment in Criminal Case No. 10,495.

As you know, jurors are called for service from time to time and examined by counsel as to qualifications or exemptions and many names have been dropped from the list and many new names added by the Commissioners since October 25, 1950. Some names have been in the jury box for an inordinately long time and in the natural course there is dead timber in the list.

Ordinarily no opinion need accompany an Order to replenish the jury box with new names, but because of the challenge now on file in the Court, asserting serious irregularities and deficiencies and contending that the present list is not a fair and true cross-section of qualified male citizens of the Territory, and having given consideration to the facts set forth in the Exhibits, I deem it a proper course and duty to discharge and annul the present list and I now and hereby discharge the entire jury box and Direct and Order the Clerk to discharge the presently impanelled Grand Jury as of this day and that the Jury Commissioners proceed without delay to select a full new list for the jury box of not less than 500 names and report to me as soon as the list is completed to the number of 300 names and thereafter when fully completed to 500 names. This does not mean that the names which are this day in the jury box should be entirely discarded; they should be reviewed and reconsidered.

It is very desirable that the citizens shall have full confidence in the even fairness of the judicial process and that the basic system under which jurors are selected should be free of any indications that there is discrimination against or in favor of any vocational class, race, or community.

Knowing that you have a difficult task, I repose full confidence in the ability and faithful efforts of the Jury Commissioners as officers of the Court to perform this Order and their duties in conformity with law and proper practice.

I have heretofore made many suggestions for strict compliance with laws which should govern your discretion, and discretion lies entirely in your hands, and I have never undertaken to superintend or dictate your procedure or judgment, nor do I do so now, but I direct your careful attention to the governing mandate as stated by the Supreme Court of the United States in Glasser v. United States, in 315 U.S. 60, at pages 85–86, 62 S.Ct. 457, at page 472, 86 L.Ed. 680, from which I quote as follows:

"Jurors in a federal court are to have the qualifications of those in the highest court of the State, and they are to be selected by the clerk of the court and a jury commissioner. * * * This duty of selection may not be delegated. * * * And, its exercise must always accord with the fact that the proper functioning of the jury system, and, indeed, our democracy itself, requires that the jury be a 'body truly representative of the community', and not the organ of any special group or class. If that requirement is observed, the officials charged with choosing federal jurors may exercise some discretion to the end that competent jurors may be called. But they must not allow the desire for competent jurors to lead them into selections which do not comport with the concept of the jury as a cross-section of the community. Tendencies, no matter how slight, toward the selection of jurors by any method

4

other than a process which will insure a
fair trial by a representative group are
undermining processes weakening the insti-
tution of jury trial, and should be sturdily
resisted. That the motives influencing such
tendencies may be of the best must not
blind us to the dangers of allowing any
encroachment whatsoever on this essential
right. Steps innocently taken may one by
one lead to the irretrievable impairment
of substantial liberties.

"The deliberate selection of jurors from
the membership of particular private organ-
izations definitely does not conform to
the traditional requirements of jury trial.
No matter how high principled and imbued
with a desire to inculcate public virtue such
organizations may be, the dangers inherent
in such a method of selection are the more
real when the members of those organiza-
tions from training or otherwise acquire a
bias in favor of the prosecution. The
jury selected from the membership of such
an organization is then not only the organ
of a special class, but, in addition, it is
also openly partisan. If such practices are
to be countenanced, the hard won right of
trial by jury becomes a thing of doubtful
value, lacking one of the essential charac-
teristics that have made it a cherished
feature of our institutions."