**In the Matter of R. Jess BROWN, Appellant.**

**No. 21224.**

United States Court of Appeals
Fifth Circuit.

June 3, 1965.

---

William R. Ming, Jr., Chicago, Ill., Jack H. Young, Jackson, Miss., Dick A. Bell, Jr., Jack Greenberg, New York City, George N. Leighton, Chicago, Ill., Carsie A. Hall, Jackson, Miss., for appellant, Louis H. Pollak, New York City, of counsel.

L. Arnold Pyle, Jackson, Miss., for the court.

Before WHITAKER, Senior Judge,* and RIVES and JONES, Circuit Judges.

WHITAKER, Senior Judge:

While teaching school in Jackson, Mississippi, appellant Brown took the bar examination on three different occasions, but failed to pass. In order to better prepare himself for the examination, he resigned his position as a teacher and took a two-year course in the Texas Law School, a part of Texas Southern University, in Houston, Texas, after which he took the bar examination again and passed and was admitted to the bar. This was in 1954. He practiced for a while in Vicksburg and then later in Jackson, Mississippi, where he has since resided. During the ten years he has practiced in Mississippi, he has been frequently engaged in litigation seeking desegregation of certain Mississippi schools.

Prior to 1963 no question had ever been raised as to his professional con-

* Of the United States Court of Claims sitting by designation.

duct, but on April 6, 1963, Chief Judge Harold Cox, United States District Judge for the Southern District of Mississippi, cited him for contempt of court "for any impropriety or impermissible irregularity" in connection with his employment as counsel by Ruthie Nell McBeth and others in a suit to desegregate the schools in Leake County, Mississippi, and in connection with certain allegations in the petition in that case. Later the citation was changed to one to show cause why he should not be disciplined for unprofessional conduct. After an extensive hearing, Judge Cox made findings of fact and conclusions of law, which concluded as follows:

> * * * Nevertheless, it is the opinion of this Court under all of the circumstances that it is not shown by a preponderance of the evidence that the respondent is guilty of any wanton impropriety in the respects in question; and that the citation should be discharged at the cost of the respondent. [R. p. 25]

The case is before this court on appeal by R. Jess Brown from this order.

Although extensive testimony was taken in connection with this citation, the relevant facts are simple and may be briefly stated.

On April 5, 1963, Brown appeared before Judge Mize of the Southern District of Mississippi in opposition to a motion by the Leake County School Board to dismiss the complaint in Hudson, et al. v. Leake County School Board, Civil No. 3382, filed by some 13 complainants, including Ruthie Nell McBeth, seeking desegregation of the schools of Leake County, Mississippi. At the conclusion of the argument on this motion, the defendants, without having given appellant any prior notice of their intention to do so, presented a motion by Ruthie Nell McBeth, mother and next friend of Gweennell McBeth, to withdraw as a party plaintiff. In her motion she alleged:

> * * * that at no time in the past has she authorized any group attorney, or organization to the use of her name or that of her minor child as a plaintiff in this suit or any of like type or import; the allegation contained in paragraph 5(a) [sic] that her home was shot into by parties whose identity local law enforcement authorities have failed to ascertain is wholly and utterly false; that she has never been molested in her home in any way. [R. pp. 10–11]

This motion was supported by her affidavit in which she averred that the facts stated in the motion were true and that the motion had been made freely and voluntarily and without any "undue influence," "and that the first she knew that she was a party to said suit was when she read her name in the paper * * *." [R. p. 12]

Although the notice required by section 6(d) of the Federal Rules of Civil Procedure had not been given, and although Brown had had no advance notice of it whatever, he at once consented that movant's name be stricken as one of the party plaintiffs. Accordingly, Judge Mize entered an order striking the name of Ruthie Nell McBeth as a party plaintiff "for good cause shown and counsel for plaintiffs having stated in open court that he did not desire to oppose the motion." [R. p. 13]

No other action was taken by Judge Mize with respect to the allegations contained in this motion, then or since; but on the following day, when appellant Brown went to the chambers of Chief Judge Harold Cox about some matter unconnected with this litigation, Judge Cox informed him that Ruthie Nell McBeth's affidavit had come to his attention and that he was preparing an order citing him for contempt of court for having included her name as one of the thirteen plaintiffs in the desegregation suit.

Appellant had been nonplussed by the presentation of the McBeth motion on the day before, and wondered if he could have included her name by mistake. Upon leaving the courtroom he immediately went to his office to verify his recollection that Ruthie Nell McBeth had signed

a retainer authorizing him to bring a suit for her, and others, seeking to desegregate the schools in Leake County. He found that she had, and he knew this when Judge Cox told him he was being cited for contempt, but he made no reply thereto. He says he was not asked for an explanation and understood that none was desired at that time. On the same day the citation was served upon him.

The citation directed him to appear before the court on April 20, 1963, at 9:00 a. m., "* * * then and there to fully disclose and reveal to this Court all of the facts and circumstances in this case showing his proper employment by each of the Plaintiffs in this case, and showing some substantial factual basis for the charge contained in paragraph 5(e) of the Complaint; or to show cause why he should not be adjudged in contempt of this Court for any impropriety or impermissible irregularity in such connections, and why he should not be properly punished therefor as to the Court may then seem meet and proper * * *." [R. pp. 14–15]

On the return day appellant Brown made due return to this citation.

The return was presented in open court. Judge Cox then decided to change the citation from one for contempt to one citing Brown to show cause why he should not be disciplined by the court. The amended citation ordered him "* * * to fully disclose to the Court all the facts in connection with his employment by Ruthie Nell McBeth and the basis for the allegations in paragraph 5(a) [sic] of the complaint, or to show cause why he should not be disciplined by this Court for any impropriety or impermissible irregularity in such connections, and why he should not be properly punished therefor as to the Court may then seem meet and proper * * *." [R. p. 21] It was agreed that his return to the citation for contempt should be treated as a return to the amended citation.

After the return had been filed, Brown's attorneys made a motion to discharge the citation, but this was overruled by Judge Cox, who said he wanted "to hear a full development on [sic] the facts." He also said he was not charging appellant with any misconduct, but that:

* * * It's really more of an inquiry because I certainly make no charges against Jess Brown. I presume he is innocent and that presumption will certainly ride with me through this proceeding even though it's not criminal.

* * * * * *

Well, I refer to the affidavit as being the entire source of the inquiry which the Court makes and I think the affidavit and the order sufficiently apprises the respondent of what the Court wants to know about whether there are or are not or were or were not any irregularities and any improprieties. * * * [Supp.R. p. 305]

The return to the citation of the appellant, who was a reputable member of the bar and whose professional conduct had never before been questioned, was detailed and unequivocal. It read in part:

* * * During 1961 a number of Negro residents of Leake County, Mississippi, consulted Respondent and other counsel for the plaintiffs herein with respect to the denial of public educational opportunities to Negro children in that county. Counsel advised those persons as to the views of counsel with respect to the legal rights of the Negro residents of Leake County to public education and the legal remedies available to secure those rights if the wrongful withholding of them continued.

In December 1961 a number of Negro residents of Leake County, Mississippi, including all of the named plaintiffs herein, duly retained Respondent to represent them and their children in an effort to desegregate the public school system of Leake County, Mississippi. These residents expressly authorized Respondent to take any and all steps he deemed available to this end, including presentation of petitions to the school board or other ad-

ministrative agencies, and expressly authorized Respondent to proceed in the necessary courts, trial and appellate, to obtain desegregation in the public schools of Leake County. * * [R. p. 16]

He further averred that:

A motion of Mrs. Ruthie Nell McBeth, one of the named plaintiffs herein, to dismiss this suit in so far as it concerns her and her minor child Gweennell, or in the alternative to remove her name as a party plaintiff, was presented to this Court on April 5, 1963, by counsel for the defendants herein. The first notice to Respondent of the allegations of the said Mrs. McBeth contained in that motion came on that day when the said motion was presented. Neither Mrs. McBeth nor any person purporting to represent her appeared before this Court at that time but Respondent suggested to the Court that the names of Ruthie Nell McBeth and her minor child Gweennell be stricken from the complaint if they so desired without regard to the truth of the allegations on which tha [sic] motion was based. * * * [R. p. 17]

When the motion to discharge the citation was made Judge Cox had before him this sworn return, and, on the other hand, he had before him Ruthie Nell McBeth's affidavit, which he said was the basis for the citation. In this affidavit she admitted that "she signed a petition seeking to desegregate the schools of Leake County, Mississippi, on or about February 23, 1962," and one on or about the * * * day of August, 1962. One or both of these petitions were drawn by appellant and presented by him to the school board.

She further says in her affidavit that she was advised that each of these two petitions "was, in effect, a threat in an attempt to have the Harmony Attendance Center reestablished in said city," but she does not say that it was appellant who so advised her. But whether this is so or not, she still admits that she signed two petitions seeking to desegregate the schools in Leake County, and this was the aim of the petition in the above-styled case of Hudson, et al. v. Leake County School Board, Civil No. 3382. Her subsequent allegation, "that at no time in the past has she authorized any group attorney, or organization to [sic] the use of her name or that of her minor child as a plaintiff in this suit or any of like type or import," seems implausible in view of her admission in the beginning of the paragraph that she had signed two petitions seeking to desegregate the schools of Leake County, which was the aim of the suit in the District Court.

Also her statement in the second paragraph of her motion, that "Your petitioner would show that she has no complaint with the system of schools being operated by defendants and does not know whether same is segregated or unsegregated; * * * *" [R. p. 11] is in direct contradiction to her admission that she signed two petitions seeking to desegregate the schools.[1]

This affidavit formed the basis on which Judge Cox says he issued the citation for contempt. It seems to us so unreliable on its face as to afford no adequate basis for the issuance of the citation, without first having called on this attorney for an explanation, at which time the attorney could have produced his signed retainer, and this would have been the end of the matter, or certainly should have been. Instead, he was notified that a citation was already in course of preparation. When the affidavit is considered alongside the return, it seems all the more inadequate to support the citation. In contrast with the inconsistent and contradictory state-

---

1. We do not refer to what she said about her home being shot into because Judge Cox found that the allegations of the complaint with reference thereto appear "to the Court to be an innocuous statement under the circumstances mentioned," and his order taxing appellant with the costs is not based upon that allegation in the petition.

ments in the affidavit, the return states unequivocally that "all" of the plaintiffs named in the suit filed in the District Court to desegregate the schools in Leake County had "expressly authorized Respondent to proceed in the necessary courts * * * to obtain desegregation in the public schools in Leake County."

We think the motion to discharge the citation should have been granted, but we cannot say that Judge Cox abused his discretion in not having done so. In re Claiborne, 119 F.2d 647 (1st Cir. 1941). Cf. Ex parte Garland, 4 Wall 333, 71 U.S. 333, 18 L.Ed. 366 (1867); In re Patterson, 176 F.2d 966 (9th Cir. 1949).

Judge Cox ordered the investigation to proceed and appointed Judge Pyle as special counsel to conduct it. On May 11 the testimony of Ruthie Nell McBeth was taken before Judge Cox. She was the first witness in the case. In her testimony she admitted that she had signed a retainer authorizing appellant Brown to represent her in the filing of petitions with the School Board and also in filing a suit in court, both seeking desegregation of the schools in Leake County, Mississippi, which retainer is in evidence as Respondent's Exhibit 1. Judge Cox in his findings of fact sets out this retainer as follows:

> * * * On December 20, 1961, Ruthie Nell McBeth signed an instrument designated as "Retainer" wherein she certified her employment of R. Jess Brown, "a duly licensed and practicing Attorney at Law of Vicksburg, Warren County, Mississippi, to represent me and my child or *children* [sic] in an effort to desegregate the public school system in Leake County, Mississippi and therefore further authorize said Attorney to take any and all necessary steps he deems available in said action including the filing and presentation of any petition which may be executed by me to the School Board or any other Administrative Agency, and to proceed in the necessary Courts, Trail [sic] and Appellet [sic], to attain said desegregation of the public

schools of said County, I further authorize said Attorney to associate any and all other Attorneys and Counselors of [sic] Law he may deem necessary in representing me in said action." * * * [R. p. 23]

Ruthie Nell McBeth also admitted that she had never written or spoken to appellant countermanding this authorization for appellant Brown to represent her for this purpose prior to the time that her motion to withdraw as a party plaintiff was filed on April 5, 1963. She says she did not know Brown and had never seen him to the best of her knowledge. Some of the other people seeking desegregation of the schools had brought the retainer to her to get her signature on it.

Ruthie Nell McBeth's testimony removed any doubt, if any legitimate doubt there could have been before, about the authority of appellant Brown to have included her name as one of the plaintiffs in the petition in the District Court to desegregate the schools. We think there was no necessity for the taking of the testimony of this woman, but certainly there was no excuse for taking any testimony thereafter. The matter should have ended there, if not before. There was no justification for subjecting appellant to the long and detailed and humiliating interrogation set out on pages 39 to 157 of the record, both inclusive, and for taking the testimony of the other witnesses, and no possible justification for assessing against appellant Brown the costs of the proceeding.

Whatever may have been Judge Cox's purpose in prolonging this inquisition, the effect of it could only have been humiliation, anxiety, and possible intimidation of appellant, a reputable member of the bar, who was completely within his rights in having filed the suit to desegregate the schools in Leake County, however distasteful this might be to many members of that community and others or, even, however unwise it may have been. He had a right as a member of the bar to seek by all legal means to secure for the members of his race the

rights and privileges to which the Supreme Court had held that they were entitled, irrespective of the merits or demerits of that holding, and there was no excuse for punishing him for misconduct in connection with it, of which the evidence of this woman completely exonerates him.

The extensive testimony thereafter, including the prolonged cross-examination of appellant, shows no misconduct on his part. He says that his first contact with the litigation of Hudson, et al. v. Leake County School Board was when he went to the office of Medger Evers, the representative of the National Association for the Advancement of Colored People in that community, to see him about some matter unconnected with this litigation. At that time Evers told him that there was a group of Negroes in his back office who wished to consult him and others with reference to the school situation in their community.

Following this meeting, a petition, signed by some 53 Negro residents of Leake County, was filed by Brown with the School Board seeking desegregation of the schools in that County. No reply was made by the School Board. Thereafter, the newspapers carried notices that various ones of the petitioners wished to withdraw from the petition. In view of this, Brown prepared another petition and took it down to the community where these Negroes lived, and asked them if they wished to sign it. A number of them did so. Ruthie Nell McBeth signed each of these petitions, although she was not present at either meeting. Brown presented this petition to the School Board, but nothing was heard from the Board.

Then it was decided to file the petition in the District Court seeking desegregation of the schools. This petition was taken down to the community by Brown, who explained its contents to those in the group who had assembled to meet him. It was agreed that it should be filed. It was filed by Brown, naming as plaintiffs those who had signed retainers authorizing him to do so.

No one of those who signed such retainers was asked for any fee. The question of money never came up. The record does not disclose how Brown was paid, if at all.

■ All the testimony that was taken completely absolves Brown from any unprofessional conduct.

Judge Cox in his findings of fact filed on August 20, 1963, recited:

The respondent was advised by the Court on April 6, 1963, that he was being citated [sic] to explain his conduct in the instances mentioned to the Court prior to the signing of the order therefor, but he made no attempt to make any explanation, or showing to the Court at the time although he had his brief case with him. Forthrightness and candor and honesty with the Court at all times by an attorney at the bar of this Court very emphatically required the respondent to have made some explanation to each of the judges of this Court on the occasions mentioned, but he did not even offer to do so. [R. pp. 24–25]

■ We cannot agree that appellant Brown was obligated to make any explanation to Judge Cox at this time. Judge Cox did not request any explanation, and to punish a lawyer for not having volunteered an explanation when none was requested is wholly unjustified. A lawyer, notified by the court that a citation was being prepared citing him for contempt, had a right to remain silent until he had seen the citation and had learned the precise nature of the charges against him; especially is this so of this Negro lawyer who had been bringing suits none too popular in the community. When the citation was served upon appellant Brown, he made a full and detailed explanation, and this is all he was required to do. "Forthrightness and candor and honesty with the Court" required him to do no other.

■ All of the testimony in this matter was taken, not at the instance of Brown, but at the instance of the court

itself, and it completely exonerates Brown from any improper conduct. There was, therefore, no justification for assessing him with the costs of this proceeding, and the District Judge abused his discretion in doing so.

We have given careful consideration to Judge Jones' position that the court should rule sua sponte that, since the case of Hudson, et al. v. Leake County School Board was pending before Judge Mize and since the alleged unprofessional conduct of appellant Brown was committed in connection with this case, exclusive jurisdiction to discipline Brown therefor was lodged in Judge Mize, and that, therefore, Judge Cox had no jurisdiction to do so.

■■ We are unable to agree with this position, since jurisdiction is lodged in a court, not in a person. The judge, exercising the jurisdiction, acts for the court. Both Judge Mize and Judge Cox were judges of the District Court for the Southern District of Mississippi and each of them had the power to act for that court. Each of them had the power to discipline an attorney at the bar of that court for unprofessional conduct.

Orderly procedure, of course, forbade Judge Cox to interfere with the handling of a case assigned to Judge Mize. But Judge Cox did not interfere with the handling of Hudson, et al. v. Leake County School Board; his action grew out of the proceedings in that case, but it did not affect the decision to be made in it. His action was with respect to misconduct of a member of the bar of the District Court for the Southern District of Mississippi, which is a matter of concern to the court, and to *all* the judges of that court, in whatever connection it may have arisen, because it affects all litigation in which the attorney may participate.

We think this would be so in any event, but certainly Judge Cox had the undoubted power to handle the disciplinary proceedings growing out of litigation assigned to Judge Mize, if Judge Mize so requested, or if he acquiesced therein. Since no objection had been raised by the parties to the handling of them by Judge Cox, rather than by Judge Mize, there was no occasion for the record to reveal why Judge Cox handled them rather than Judge Mize, e. g., whether he did so at Judge Mize's request or with Judge Mize's acquiescence. If not at Judge Mize's request or with his acquiescence, the record fails to reveal it.

■ All these things being true, as we see it, there is no occasion for the court to consider sua sponte Judge Cox's authority to act for the court.

That part of the order assessing appellant Brown with the costs of the proceeding pursuant to the citation is vacated and set aside. It is further ordered that the cash bond of $500 deposited by appellant Brown to stay execution of the order of the District Court be returned to him forthwith.

JONES, Circuit Judge (concurring specially):

The question of jurisdiction is a threshold inquiry which should be made by the Court, sua sponte, and jurisdiction of the subject matter cannot be conferred by waiver or consent. Brown Shoe Co. v. United States, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510; Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001.

There are two judges of the District Court for the Southern District of Mississippi, Judge Cox and Judge Mize, the former being Chief Judge. The case of Hudson v. Leake County School Board, referred to in the majority opinion, had been assigned to and was pending before Judge Mize. The motion to dismiss was before Judge Mize for a ruling and disposition. The motion of Ruthie Nell McBeth was submitted to Judge Mize and the order dismissing her was entered by Judge Mize. It was Judge Mize' case. Judge Cox was not asked to inject himself into the case, investigate or take

over any part of it. As said by the majority, the McBeth affidavit "had come to his attention." I think it was well said that "when a cause is pending before a particular Judge of such a [District] Court, said Judge for the time being has exclusive jurisdiction thereover * * *". Buhler v. Pescor, D.C. W.D.Mo.1945, 63 F.Supp. 632, 639. See also U. S. v. Heath, D.C.Hawaii 1952, 103 F.Supp. 1. The question as to whether the motion of a named plaintiff should be permitted to be withdrawn is a part of the cause. The question as to whether a named plaintiff authorized counsel to bring an action on her behalf is a part of the cause, and I think this is so whether the question is raised by a motion of the named plaintiff to withdraw or by a contempt citation against the attorney for misconduct in the unauthorized use of the name of a person as a plaintiff. In either case, the exclusive jurisdiction was, I think, in Judge Mize. I would vacate the order on the ground that the Judge who entered it was without jurisdiction.

I have given careful consideration to the comments of the majority with respect to this special concurrence. Of course, as the majority says, jurisdiction is lodged in a court and not in a judge. The word "court" like many another word has shades and grades of meaning. It is technically incorrect to fail to make a distinction between the judge and the court over which he presides, although "court" and "judge" are often used synonymously. But the majority will hardly deny that Judge Mize was acting as a court, with jurisdiction over the parties and subject matter in holding a hearing on a motion in a case regularly assigned to him. Judge Cox, although Chief Judge of the United States District Court for the Southern District of Mississippi, was no part of the court over which Judge Mize was presiding. It seems to me that the more the majority writes the more it demonstrates the fallibility of its position.